FILED

2003 DEC -8 P 2: 23

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT
## At Bridgeport

|  |  |
|---|---|
| RICHARD R. QUINT | Inmate #123433 |
| Plaintiff | : CIVIL ACTION NO. 3-02-2053 (AVC)(TPS) |
|  | : |
| VS. | : |
|  | : |
| A. DUNAJ, ET AL | : |
| Defendants | : DECEMBER 5, 2003 |

### DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO COMPEL

By Motion dated December 1, 2003, the plaintiff has moved to compel the defendant to comply with his first set of discovery dated September 20, 2003. The plaintiff represents to the court that he served the discovery and sent a follow up letter yet claims discovery is outstanding. The defendants take issue with the plaintiff's representations and objects to the motion to compel as the defendants have fully complied with the first set of discovery.

The defendants through counsel represent that they were served a first set of discovery dated June 20, 2003. Each of the individual defendants complied with the discovery and also objected to some of the questions. Following compliance, counsel for the defendants and the plaintiff spoke on September 19, 2003 concerning the compliance and the objections. An agreement was reached to resolve the discovery dispute. Counsel for the defendants asked for 30 days to comply. Plaintiff agreed to the 30 day time period. By supplemental notice dated October 17, 2003 compliance was

GORDON, MUIR AND FOLEY, LLP, Attorneys at Law, Hartford Square North, Ten Columbus Boulevard, Hartford, CT 06106-1976
Telephone (860) 525-5361          Facsimile (860) 525-4849          Juris No. 24029

provided. See Exhibit A.

With respect to the remaining questions, the following is provided:

Interrogatory #5 - Counsel for the defendants informed the plaintiff that there is no master recording of the 911 call. A transcript of the recording was providing to the plaintiff.

Interrogatory #7 – The interrogatory is directed to Defendants Dunn, Bethke, Anderson and Darby. Each answered the question by the defendants. See Exhibit B.

Interrogatory #10 – The interrogatory is directed to Defendant Dunn. Defendant Dunn did not take the call but answered the question to the best of his ability. See Exhibit B.

Interrogatory #34 – All defendants objected to this interrogatory. It calls for a legal conclusion, opinion and is not a fact question. See Exhibit B.

Wherefore, the defendants respectfully submit that they have fully complied with the plaintiff's first set of discovery. Therefore, the plaintiff's motion to compel should be denied in its entirety.

DEFENDANTS:

By _____
**Patty G. Swan**
Gordon, Muir & Foley, LLP
10 Columbus Boulevard
Hartford, CT 06106
Federal Bar No. ct15656

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, to the following pro se party of record on December 5, 2003:

Richard R. Quint
Inmate #123433
Cheshire Correctional Institute
900 Highland Avenue
Cheshire, CT  06410

Patty G. Swan

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

**EXHIBIT A**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976

TELEPHONE (860) 525-5361                FACSIMILE (860) 525-4849                JURIS No. 24029

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD

|  |  |  |
|---|---|---|
|  |  | Inmate #123433 |
| RICHARD R. QUINT | : | CIVIL NO. 3:02CV2053(AVC) |
| V. | : |  |
| A. DUNAJ, ET AL. , | : | OCTOBER 17, 2003 |

### DEFENDANTS' SUPPLEMENTAL RESPONSES TO
### PLAINTIFF'S INTERROGATORIES DATED JUNE 20, 2003

Pursuant to the agreement of the parties, the undersigned defendants respectfully state that they have provided the plaintiff with more detailed information pertaining to Interrogatory No. 3 of the Request for Interrogatories and Production served upon them by the Plaintiff on June 20, 2003.

DEFENDANTS:

By    *Patty G. Swan*

Patty G. Swan
Gordon, Muir & Foley, LLP
10 Columbus Boulevard
Hartford, CT 06106
Juris No.: 24029

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, to the following counsel of record on October 21, 2003:

Richard R. Quint
Inmate #123433
Cheshire Correctional Institute
900 Highland Avenue
Cheshire, CT 06410

Henri Alexandre
Assistant Attorney General
Attorney General's Office
110 Sherman Street
Hartford, Connecticut 06105

Patty G. Swan

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD

RICHARD R. QUINT

V.

A. DUNAJ, ET AL.,

:

:

:

Inmate #123433
CIVIL NO. 3:02CV2053(AVC)

JUNE 20, 2003

## INTERROGATORIES DATED JUNE 20, 2003

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

3.    From all parties, State all your job qualifications and resume.

**ANSWER:    None of the defendants have a resume. The following are each defendant's job qualifications:**

**Lieutenant William Anderson –** Bachelors Degree, University of New Haven in Criminal Justice; Police Officer Certification current through June 30, 2005; Ongoing training in firearms, patrol procedures, practical skills, human relations, management, executive training, domestic violence, juvenile matters, police and the law, patrol procedures, criminal investigations, supervision, gang-related violence, bigotry/bias crimes, rape crisis, advanced gang investigations, CPR, SWAT team training, terrorism training for patrol & investigators, on the job training and experience.

**Officer Edward Bethke –** State of Connecticut Municipal Police Training Counsel Connecticut Police Academy Diploma; Police Officer Certification current through June 20, 2006; On going training in firearms, police and the law, practical skills, human relations, patrol procedures, domestic violence, sexual violence, juvenile law, gangs, patrol procedures, criminal investigations, human relations, sexual harassment, rape crisis, high risk stop & officer tactics;

certified as a Telecommunicator and as a Public Safety Telecommunicator by the Office of Statewide Emergency Telecommunications; certified for breath analysis instrument operator, on the job training and experience.

**Officer Antonio Vitti –**  Police Officer Certification, on-going training in DWI enforcement, police & the law, human relations, patrol procedures, practical skills, courtroom testimony, domestic violence, sexual violence, juvenile law, criminal investigations, liability, legal update, motor vehicle stops, mental health & gangs, stress management and ethics, cultural diversity, hate & bias crimes, bullying - prevention and the media, investigation techniques, officer survival skills in vehicle stops, officer safety, gang intervention, sexual harassment, handling juveniles, rape crisis; certified as a Telecommunicator and as a Public Safety Telecommunicator by the Office of Statewide Emergency Telecommunications, and on the job training and experience.

**Officer Andrew Dunaj –** High School diploma;  2 ½ years college courses with concentration on Political Science/International Studies and Foreign Languages; US Army for 9 years with occupations specialties and extensive training in communications, Military Intelligence and Special Forces; Milford Police Academy; Police Officer Certification current through June 30, 2005, on-going training in human relations, police and the law, patrol procedures, firearms, bigotry/bias crimes, domestic violence, gang-related violence, juvenile matters, rape crisis, practical skills, certified breath analysis instrument operator, completed course in Coaching the Emergency Vehicle Operator – Police, certified as a Telecommunicator and as a Public Safety Telecommunicator by the Office of Statewide Emergency Telecommunications, and on the job training and experience.

**Detective Christopher Dunn –** State of Connecticut Municipal Police Training Counsel Connecticut Police Academy Diploma , Police Officer Certification, on-going training in High risk liability, sexual harassment, legal updates part one and two, domestic violence, diversity, sexual violence, suicide awareness, courtroom testimony, killed in the line of duty, gangs, hazardous

materials, firearms safety, heavy construction police and the law, sexual harassment, rape crisis, domestic violence, report writing, courtroom testimony, landlord/tenant, officer safety, gang intervention, firearms, DWI enforcement, crime prevention, juvenile law, human relations, human relations, patrol procedures, instructor development, auto theft and fraud, investigations, wireless fraud investigations, COLLECT certified, Field Training Officer, and United States Army Military Police School Diploma and on the job training and experience.

**Officer Sean Darby -** Police Officer Certification, on-going training in juvenile law, human relations, domestic violence, gangs, police and the law, sexual violence, patrol procedures, rape crisis, courtroom testimony, investigations, sexual harassment, rape crisis, killed in the line of duty, high risk top & officer tactics, patrol/narcotics officer survival, the physical and psychological encounter, special operations for street level drug enforcement, legal update parts one and two, diversity, suicide awareness, hazardous materials, firearms safety, motor vehicle stops, officer safety, disgruntled employees, firearms, human relations, patrol procedures, practical skills, criminal investigations, and gang-related violence, and on the job training and experience.

**Officer Dan Esposito –** Police Officer Certification current through June 30, 2005, on-going training in human relations, police and the law, patrol procedures, firearms, practical skills, domestic violence, juvenile matters, gang-related violence, rape crisis, bigotry/bias crimes, legal intervention with domestic violence cases, safety and survival techniques, completed course in coaching the emergency vehicle operator – police, COLLECT certified, Field Training Officer, certified as a Telecommunicator and as a Public Safety Telecommunicator by the Office of Statewide Emergency Telecommunications, and on the job training and experience.

**Officer Sean Moore –**State of Connecticut Municipal Police Training Counsel Connecticut Police Academy Diploma , Police Officer certification current through June 30, 2006, on-going training in practical skills, criminal investigations, patrol procedures, stakeout & surveillance techniques, human relations, police and the law, handling juveniles, courtroom testimony, domestic

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361              FACSIMILE (860) 525-4849              JURIS NO. 24029

violence, landlord/tenant matters, sexual harassment, sexual violence, killed in the line of duty, gangs, hazardous materials, firearms, gang-related violence, bigotry/bias crimes, COLLECT certified, certified as a Telecommunicator and as a Public Safety Telecommunicator by the Office of Statewide Emergency Telecommunications, and on the job training and experience.

**Officer Brandon Marschner -** State of Connecticut Municipal Police Training Counsel Connecticut Police Academy Diploma , Police Officer certification current through June 30, 2005, on-going training in boating enforcement seminar, safety and survival techniques, water safety, human relations, police and the law, patrol procedures, bias, bigotry & hate, new public acts/liability, racial profiling, high risk and low risk stops, legal update parts one and two, high risk liability cases, sexual harassment/hostile work environment, gangs, juvenile law, landlord/tenant matters, alzheimer's awareness, critical incident stress management & post shooting trauma, substance abuse issues, practical skills, firearms, domestic violence, rape crisis, completed course in coaching the emergency vehicle operator – police, COLLECT certified, certified Breath Analysis Instrument operator, certified as a Telecommunicator and as a Public Safety Telecommunicator by the Office of Statewide Emergency Telecommunications, and on the job training and experience.

**VERIFICATIONS PREVIOUSLY PROVIDED**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976

TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS NO. 24029

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF CONNECTICUT AT HARTFORD

|  |  |  |
|---|---|---|
|  |  | Inmate #123433 |
| RICHARD R. QUINT |  : | CIVIL NO. 3:02CV2053(AVC) |
| V. |  : |  |
| A. DUNAJ, ET AL. , |  : | SEPTEMBER 16, 2003 |

### <u>INTERROGATORIES DATED JUNE 20, 2003</u>

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

1.    From all parties, What is your full name and address?

**ANSWER:    Officer Christopher Dunn**
**430 Boston Post Rd**
**Milford, CT 06460**

2.    From all parties, State all assets you have.

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

3.    From all parties, State all your job qualifications and resume.

**ANSWER:    Police Officer for the City of Milford**

4.    From the following parties: Dunn, Bethke, Anderson, and Darby.  Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

GORDON, MUIR AND FOLEY, LLP, Attorneys at Law, Hartford Square North, Ten Columbus Boulevard, Hartford, CT 06106-1976
Telephone (860) 525-5361          Facsimile (860) 525-4849          Juris No. 24029

**ANSWER:**    According to the computer entry made by communications, personnel listed on fact sheet of report anonymous complaint of couple arguing in area of Sanpiper Cresent/Merwin Ave.

5.    The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION:**    The foregoing interrogatory is objected to on the grounds that it is not a question. To the extent that the same can be treated as a request to produce, the transcription is enclosed.  The tape no longer exists.

6.    From the following parties: Dunn, Bethke, Anderson, Darby, And Hurley. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:**    The charge of Breach of Peace fit the incident.

7.    From the following parties: Dunn, Bethke, Anderson, Darby. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:**    During initial interviews both individuals were asked if medical treatment was needed and both declined medical treatment.  I was not aware of medical treatment being requested after this.

8.    From the following parties: Dunn, Bethke, Anderson, And Darby. Was Mr. Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:**    No, because according to the report no medical attention was requested.

9.    What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:**    We ask if they want treatment, if so, it is offered.  If declined, it is indicated in the report.

10.    From the following parties: Dunn. In your report on 7/9/02 why doesn't it state who made complaint that brought you to the area of 48 Merwin Ave on 7/9/02.

**ANSWER:**    **According to the computer entry made by communications, personnel listed on fact sheet of report anonymous complaint of couple arguing in area of Sanpiper Cresent/Merwin Ave.**

11.    From all parties: Is it your job to protect and serve the public?

**ANSWER:**    **As a police officer it is my job to protect and serve the public**

12.    From all parties: What does it mean to you to protect and serve the public?

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the permissible scope of discovery and which is opinion rather than fact.**

13.    From the following parties: Hurley, Richards, Why was Mr. Quint changed from complainant to defendant?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

14.    From the following parties: Hurley, Richards. Why wasn't charge of breach of peace dropped against Mr. Quint same time it was dropped against Miss Casey?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

15.    From the following parties: Hurley, Richards. Why didn't family relations take Mr. Quint's case along with Miss Caseys'?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

16.    From the following party: Richards. Did Mr. Quint have visible injuries on day you interviewed him?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

17.    From the following parties: Hurley, Richards. Did Mr. Quint have visible injuries on day of arraignment?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

18.    From the following parties: Hurley, Richards. Since Mr. Quint had all the injuries. Why wasn't there a protective order issued against Miss Casey for Mr. Quint?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

19.    From the following party: Hurley. How many times has Mr. Quint tried to get protective order against Miss Carey and been Denied?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

20.    From the following parties: Why was there protective order issued only against Mr. Quint?

**OBJECTION:  The interrogatory does not identify which defendants the question is directed to.  Without waiving said objection, the defendant cannot respond to this interrogatory as the issuance of a protective order is outside the scope of his duties and responsibilities.**

21.    From all parties: Did Mr. Quint ever assault Miss Casey?

**ANSWER:    This defendant has no independent knowledge of this and therefore, cannot answer this interrogatory.**

22.    From all parties: Did Miss Casey ever assault Mr. Quint?

**ANSWER:    This defendant has no independent knowledge of this and therefore, cannot answer this interrogatory.**

23.    From the following party: Hurley. Did you ever do anything to prevent Mr. Quint from being subjected to gender discrimination? If not, why not?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

24.    From the following party: Richards. How many protective orders has Miss Casey had against different people?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

25.    From all parties: Has Miss Casey ever assaulted any one in the past besides Mr. Quint?

**ANSWER:    This defendant has no independent knowledge of this and therefore, cannot answer this interrogatory.**

26.    From the following parties: Dunaj, Moore, Esposito, Marshner. On 8/21/02 when Mr. Quint was arrested were there mattresses in the holding cells in Milford police station? If not, why not?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

27.    From the following parties: Dunaj, Moore. Was there a mattress in cell M-4 when Mr. Quint was secured in cell on 8/21/02? If not, Why not?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

28.    From the following parties: Dunaj, Moore. Was Mr. Quint provided with linens and blanket. When secured in cell M-4 on 8/21/02? If not, Why not?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

29.    From the following party: Hurley. Did you investigate the accusations made in warrant you signed of on? If not, Why not?

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

30.    From the following party: Hurley. Did you advise any officers as to contents to be written in warrant?, or in anyway in this investigation?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

31.    From the following party; Dunaj. On the warrant signed by you on 8/31/02 did states attorney Hurley advise you as to the contents to be stated in it?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

32.    From the following party: Dunaj. On the warrant signed by you on 8/31/02 you state you contacted Mr. Quint at his mother's residence on 7/27/02 by phone. Provide notes and phone records of said contact on 7/27/02.

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

33.    From the following parties: Dunaj, Dunn, Bethke, Anderson, Darby, Moore, Vitti, Esposito, and Maschner. Was Mr. Quint brought to Milford police station on 5/7/02 with any injuries? Who was he brought in by? Were his injuries treated. If not, Why not? Provide all police reports for 5/7/02 concerning Mr. Quint.

**ANSWER:**    **The defendant has no independent knowledge of this incident as he was not involved in this case and therefore, cannot respond to this interrogatory.**

34.    From all parties: At any time during the events described in the complaint. Did you protect Mr. Quint's' right to equal protection of the law? If not, Why not?

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it seeks information beyond the permissible scope of discovery and which is opinion rather than fact.**

35.    From all parties: Is it normal procedure to change complainant to defendant?

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it seeks information beyond the permissible scope of discovery and which is opinion rather than fact.**

36.    From all parties; is it normal procedure not to report in reports who complainant is?

**ANSWER:**      **Yes, because when telephoning complaints to the police, sometimes the complainants wish to remain anonymous or refuse to provide their name.**

     37.    From the following party: Hurely. If 911 call from Mr. Quint was exculpatory information why did you avoid and try to hide it through out all of the court proceedings involving Mr. Quint arising from the 911 call Mr. Quint made on 7/9/02.

**ANSWER:**      **The defendant does not answer this question, as it is not directed to him.**

## DEFENDANT'S VERIFICATION

I, **Christopher Dunn**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____
CHRISTOPHER DUNN

Subscribed and sworn to before me this _207TH_ day of _AUGUST_, 2003.

_____
Notary Public
My Commission Expires:

KENNETH E. WALEWSKI
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2006

**DOCUMENTS PROVIDED WITH DISCOVERY:**

1. Transcription of 7/9/02 call
2. May 7, 2002 incident report
3. July 9, 2002 incident report
4. Job description

GORDON, MUIR AND FOLEY, LLP, Attorneys at Law, Hartford Square North, Ten Columbus Boulevard, Hartford, CT 06106-1976

Telephone (860) 525-5361                    Facsimile (860) 525-4849                    Juris No. 24029

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, to the following counsel of record on September 16, 2003:

Richard R. Quint
Inmate #123433
Corrigan-Radgowski C.C.
982 Norwich New London Turnpike
Uncasville, Connecticut 06382

Henri Alexandre
Assistant Attorney General
Attorney General's Office
110 Sherman Street
Hartford, Connecticut 06105

*Patty G. Swan*

**Patty G. Swan**

1. Every patrolman, in carrying out the functions of the department, namely, the preservation of the public peace, the protection of life and property, the prevention of crime, and the proper enforcement of all laws and ordinances of which the department takes cognizance, shall constantly direct his best efforts to accomplish these ends, intelligently and efficiently, and shall hold himself in readiness at all times to answer the calls and obey the orders of his superiors. Every patrolman shall be called to strict accountability for the good order of the beat or post to which he may be assigned and shall have such hours of duty as may be prescribed by the Superintendent of Police.

2. A patrolman, unless otherwise directed, shall report at Headquarters before going on duty, properly uniformed and equipped, and shall give careful attention to dispatches, orders, and instructions read or issued by his superior officers. If absent without leave, he shall be reported to the Superintendent of Police.

3. A patrolman, when assigned to a beat, shall faithfully, diligently, constantly, and continually patrol every part to the limits thereof until the expiration of his tour of duty. He must not sit, lounge, or loaf. When required to interrupt his regular patrol to give attention to any complaint, call for assistance, arrest of an offender, or other police emergency, he shall attend to such duty with business-like dispatch and without unnecessary loss of time resume the patrol of his beat in the regular manner.

4. It shall be the duty of a patrolman to report to the desk officer or other commanding officer all crimes, suicides, attempted suicides, fires, accidents, breaches of peace, complaints of citizens and all other important happenings coming to his attention upon his beat or elsewhere whether on or off duty.

5. A patrolman shall give his assistance for the protection of persons and property and the enforcement of law even off his beat in any case requiring immediate attention, but he shall return to his own beat as soon as possible.

6. A patrolman shall carefully inspect every part of his beat as often as possible and by his vigilance and activity render it difficult for anyone to commit crime therein. He must, to the utmost of his power, prevent the commission of assaults, breaches of the peace, and all other offenses about to be committed.

7. A patrolman shall at night and during the time that business houses are closed exercise the greatest vigilance, frequently examining and trying accessible doors and windows of business and public places on his beat; investigating all suspicious circumstances which present themselves. He shall from time to time examine in like manner all dwellings on the closed house list on his beat. If any windows or doors are found broken, open or unsecured, the fact shall be promptly reported to the desk officer, and the owner notified when possible.

8. A patrolman shall strictly note the conduct of all suspicious persons and all persons of known bad character, and make such observations as will enable recognition of them at any time. He shall particularly note their movements, habits, associations, and the premises they enter or frequent. He shall learn their names, residences, occupations, and keep a record of the same and report to his commanding officer all information he may obtain.

9. A patrolman shall furnish such information or render such aid to all persons when requested by any person as is consistent with his duties.

10. A patrolman shall note and investigate, especially during the night time, all vehicles, the drivers or occupants of which in any manner may excite suspicion. He shall take such immediate action as he deems

necessary, and report the facts to the desk officer. He shall pay particular attention to motor vehicles of all kinds, observing their numbers, and constantly watch for such as have been stolen, or which may have been used in the commission of crime, or are not properly licensed or legally equipped.

11. A patrolman shall inform himself as to houses or buildings on his beat in which violations of the law are believed to exist and shall take necessary police action and if uncertain as to how to proceed, shall report the facts to a superior officer.

12. A patrolman shall familiarize himself with the locations of fire and police signal boxes and all telephones on his beat available for his use. A patrolman on foot patrol, during his hours of duty shall report to the police telephone operator from patrol signal boxes every hour, or at such times and places as may be prescribed and designated by his division commander. This, however, should not prevent a patrolman from remaining at any particular place for any length of time if his presence is required on legitimate and necessary police business.

13. A patrolman, shall, when any disturbance occurs within his beat or in the immediate vicinity thereof, instantly proceed to the spot and use his best efforts to restore peace and order. If any person shall have committed a crime, or shall by loud outcrys or otherwise persist in disturbing the peace, the person offending shall be taken into custody and conveyed to Police Headquarters.

14. A patrolman shall not leave his beat, except for some police or other proper necessity. If required to absent himself from his beat, he shall, as soon as circumstances permit, communicate with his Commanding Officer the fact of leaving his beat and the reason therefore. Upon his return he shall exercise extra-ordinary vigilance in determining whether or not any circumstances have occurred requiring police attention.

15. A patrolman on a beat shall see that the sidewalks and street corners are not obstructed by persons loitering thereon. Whenever three or more persons obstruct any street, sidewalk, or public place in violation of State Statute, it shall be the duty of the patrolman on complaint, or at the direction of his commanding officer to courteously request them to move on; and, if such persons unreasonably persist in remaining so as to discommode other pedestrians, the patrolman shall take them to Police Headquarters.

16. A patrolman shall not have in his possession, without the knowledge and consent of his commanding officer, a key to any premises upon or near his beat.

17. A patrolman, when on patrol duty, shall not carry on lengthy conversations with patrolmen or with persons unless it is for the purpose of communicating or receiving information pertaining to police duties.

18. A patrolman, while on patrol duty, shall not enter any house, building, or place of business or amusement, except when necessity requires or in the strict discharge of his duty; a patrolman, however, shall be permitted to suspend patrol for the purpose of eating, but only for such time as is reasonably and actually necessary therefor, which shall be regulated and arranged by his commanding officer. Except under unusual conditions, lunch periods shall not be taken within 1½ hours of end of tour of duty. No more than two officers in uniform shall be in the same diner at the same time, except on official business.

19. A patrolman shall make himself thoroughly familiar with the City, including the routes of bus lines, location of streets, public buildings and places, hospitals courts, transportation offices and depots, prominent office and other buildings, important industrial plants, highways, and the location of City, County, State, and Federal officials and such other knowledge pertaining to the Government of the City and County and institutions thereof as will enable him to give intelligent and helpful information and assistance when requested.

20. A patrolman shall note and report immediately to his commanding officer all incidents and conditions coming under observation on his beat, such as dangerous buildings, street or traffic lights out, traffic signs and other devices removed or damaged, public property which may be found defective or broken — (drain, pumps, fire plugs, sewers, water pipes) broken and dangerous trees, dangerous holes or obstructions in sidewalks, roadways, and parks; and shall immediately take such measure as will protect the public interests until the conditions have been properly corrected.

21. A patrolman may seek and shall receive from his superior officers any advice, counsel and guidance necessary to the proper performance of his duty. In the proper performance of his duty each patrolman shall receive the fullest cooperation and backing of his superior officers and the department as a whole.

22. Patrolmen shall be responsible for reports and/or investigations on their assigned "beats," unless otherwise ordered by a superior officer.

23. Patrolmen assigned to foot patrol are to notify headquarters each time they leave the immediate vicinity of their call box, and when they return. (24 hours per day).

24. All duties and/or assignments are subject to temporary change, at the discretion of the desk sergeant, (or C.O.).

## LIEUTENANT

1. A Lieutenant commands the activities of subordinates in a prescribed manner; is responsible for the prompt, effective, efficient and unprejudiced implementation of all duties and orders.

2. A Lieutenant must be aware of all conditions in the City requiring Police attention, such as, traffic, criminal and patrol activities, and notifies supervisors immediately of major crimes or instances involving the Milford Police Department.

3. A Lieutenant is responsible for the assignments of subordinate personnel to make most effective use of ability and initiative of personnel; supervises continued training and development of personnel in the Department; meets with subordinates for consultation, instruction and review of work performance, matters involving moral, general health and physical fitness; new and advanced modern Police practices, methods, techniques and scientific aids, policy and procedure, and the conducting of investigations and raids.

4. A Lieutenant acts as Division Commander and/or Headquarters Executive Officer, when assigned or in the absence of a Superior Officer.

5. A Lieutenant prepares and delivers lectures on Police topics in the training program, the auxiliary Police training programs and to other interested groups or organizations; cooperates with all other law enforcement agencies and maintains good public relations with the news media, public officials and the general public; represents the Department in public appearances.

# SERGEANT

1. A Sergeant assigns and supervises a work group of Patrolmen in designated areas or designated assignments on a rotating, around the clock system; generally a 40-hour work week.

2. A Sergeant is responsible for the efficient operation of Police Headquarters in the absence of a Superior Officer.

3. A Sergeant investigates major crimes and makes special investigations of violations of criminal laws; identifies and apprehends criminals; collects and prepares evidence for criminal and civil Court use; visits and minutely examines scenes of crimes; follows up investigative leads and clues; supervises and correlates evidence and prepares requests for scientific examinations; interrogates victims, suspects, witnesses; prisoners and complainants; ability to supervise and prepare comprehensive and legally acceptable confessions, statements and dying declarations.

4. A Sergeant works closely with Prosecuting Attorney, Medical Examiner, State's Attorney, Coroner, other Police Departments and other agencies.

5. A Sergeant supervises preparation of extradition proceedings, and participates in crime prevention programs.

6. A Sergeant investigates civil cases for City Attorney, in which the City is a party in interest, and prepares detailed and comprehensive case files.

7. A Sergeant works with and maintains Liaison with other Departments' investigators; State, Federal agencies and Courts, and does related work as required.

8. A Sergeant may be in charge of Division in absence of a Superior Officer.

# MILFORD POLICE DEPARTMENT

## MASTER TAPE TRANSCRIPTION

| DATE OF TAPE: | 7/9/02 | START TIME: | 0213:30 | ENDTIME: | 0349:51 |
|---|---|---|---|---|---|

### PHONE EXT. 201

| TIME | SPEAKER | |
|---|---|---|
| 0213:30 | GEISEL | Milford Police Department, Geisel. |
| | CALLER | Ah, yes, um, I am calling about a disturbance. Um, there's a--there's some people that are really arguing very, very loud. Um, it's actually-they woke me up and um, you know it just doesn't sound too good and I just thought I should call and let them, um, let the Police Department know about it. |
| | GEISEL | Okay, where are they? |
| | Caller | Um, I live, um, it's just past, um, Surf Village Condominiums, um, on Merwin Avenue. I don't know the number; but, um, the Surf Village Condominiums is where, um, this call is coming from, and, ah, you know you can just hear them really yelling at the top of their lungs back and forth and it's been going on for a while. |
| | Geisel | Are they outside? Are they inside? |
| | Caller | It sounds like they're outside now, but they're like inside and outside. |
| | Geisel | Okay, what's the, the address there? |
| | Caller | I don't know the number of where they are, but it's just past Surf Village Condominiums? |
| | Geisel | What is your address? What is your mailing address? |
| | Caller | Um, the address is on Sand Piper Crescent, but it's on, um, Merwin Avenue, which is just beyond where, um, where this place is. |
| | Geisel | Okay, did you want to leave your name? |
| | Caller | I'd rather not. |
| | Geisel | Okay. |
| | Caller | But it-it sounds like a husband and wife or two people, man and woman, having quite a dispute out there. |
| | Geisel | Okay. |
| | Caller | All right? |
| | Geisel | All right. |
| 0214:52 | | END |
| | | |
| 0220:40 | Geisel | Police Emergency. |

| | Caller | What? |
|---|---|---|
| | FD Dispatch | Talk to the Police. |
| | Caller | Hello? |
| | Geisel | Hello. Police Emergency |
| | Caller | How you doing? I'm being assaulted by my girlfriend-48 Merwin Avenue. I got punched in the face a few times-she smashed up my stuff -bit me and everything-here they are now |
| | Geisel | Okay, where-oh |
| | Caller | They're right in front of me. |
| | Geisel | Oh, Police are? |
| | Caller | Yeah. |
| | Geisel | Okay. |
| | Caller | I'm tired of this. (To someone in the background-How you doin'?) |
| | Geisel | Okay. |
| | Caller | (To Officers in background-A my girl she's ?????? (unreadable) bit me, bruised me-everything else-smashed all my property in the house-I'm at 48 Merwin Avenue, and that's her walking down the street now. (Garbled in the background.) |
| 0221:23 | | END |
| | | |
| | | **RADIO FREQUENCY #1** |
| 0215:43 | Geisel | 30 and 36 |
| | Dunn | 30-R & D |
| | Bethke | High and the road |
| 0216:22 | Geisel | Both units-in the area of Sandpiper Crescent and Merwin Ave check for a couple possibly outside arguing.  Caller is unable to identify where it is exactly coming from. |
| | Dunn | 30-received |
| | Bethke | Received |
| | | |
| 0220:21 | Dunn | 30-I'm coming into the area. |
| | Geisel | 10-4 |
| 0221:29 | Bethke | 36-also coming into the area. |
| | Localzo | 10-4 |
| | Lt. Anderson | 303 |
| | Localzo | 303 |
| | Lt. Anderson | The male half is down at number 48. He's on the road. The female half is walking westbound on Edgefield right now, by Post 196. |
| | Localzo | 30 and 36-copy that? |

| | Dunn | 30-I'm with the female in front of the American Legion. |
|---|---|---|
| | Bethke | 36-received |
| 0223:42 | Bethke | 36-run a male. |
| | Localzo | Come in. |
| | Bethke | Last name-Quebec, Uniform, India, November, Tango-first name Richard-1965/03/17. |
| | Localzo | 10-4 |
| 0228:06 | Localzo | 36 |
| | Bethke | 36 |
| | Localzo | He's valid-he's showing a File 17 as a registered sex offender. |
| | Bethke | I'm aware of that. Is he negative? |
| | Localzo | That's 10-4 |
| | Bethke | 10-4 |
| | Dunn | 30 to 36 |
| | Bethke | Go ahead |
| | Dunn | I'm going to transport her down there. |
| | Bethke | Go ahead 30 |
| | Dunn | I'm going to transport this female half down to your-her residence there. |
| | Bethke | 10-4 |
| | | |
| | Dunn | 30 |
| | Localzo | 30 |
| | Dunn | I'm going to be transporting her down to 36's location. Mileage is 004-from the American Legion. |
| 0229:28 | Localzo | 0229 hours station KCA587 |
| | | |
| 0229:34 | Dunn | 30-arrived 004 |
| | Localzo | 0230 |
| | | |
| 0234:48 | Bethke | 36 |
| | Geisel | 36 |
| | Bethke | Just so you're aware 30's going to have two 94's. We have everything under control. |
| | Geisel | 10-4 |
| | | |
| 0235:37 | Dunn | 30 to 36 |
| | Bethke | Go ahead. |
| | Dunn | That's second floor, correct? |
| | Bethke | The first. |
| | Dunn | 10-4 |

| 0239:22 | Localzo | 30 |
|---|---|---|
| | Dunn | Enroute with a female 94-mileage is 004. |
| | Localzo | 0239 hours |
| | Bethke | 36 I'll have the male-777 |
| | Bethke | 0240 hours station KCA587 |
| 0239:47 | | END |
| | | |
| 0247:40 | Dunn | 30-the sallyport. |
| | Dunn | Close it 009 |
| | Geisel | 10-4 0248 |
| 0249:26 | Bethke | 36 It'll be 782 |
| | Localzo | 0249 |
| | | |

| RECORDING MADE | | TRANSCRIBED | |
|---|---|---|---|
| Date: | 04/29/03 | Date: | 06/24/03 |
| Time: | 0940 | Time: | 10:56 |
| Officer: | Sergeant G. Depgen | Stenographer: | K. A. Walsh |