**A**

1

1      UNITED STATES DISTRICT COURT
                 for the
2          DISTRICT OF CONNECTICUT
               at Bridgeport
3

4   RICHARD R. QUINT
                                  :   CIVIL ACTION NO:
5                                 :   3-02-2053(AVC)(TPS)

    VS. :
6

7   A. DUNAJ, ET AL                :   DECEMBER 16, 2004

8          DEPOSITION OF:  RICHARD R. QUINT
                  taken at
9       Corrigan Correctional Institution
         986 Norwich/New London Turnpike
10             Uncasville, Connecticut

11   APPEARANCES:

12
     Representing the Plaintiff:
13
          RICHARD R. QUINT, pro se
14        Inmate #123433

15
     Representing the Defendant:
16
          GORDON, MUIR & FOLEY
17        Ten Columbus Boulevard
          Hartford, CT  06106-1976
18        BY:  PATTY G. SWAN, ESQ.
          (860) 525-5361
19

20

21

22

23

24
                    Keli McGilton
25    Licensed Court Reporter-00088/Notary Public
       NIZIANKIEWICZ & MILLER REPORTING SERVICES

1     the 7/9 incident, did you ever seek any medical

2     attention from anyone?

3         A.    I should have, but I didn't, no.

4         Q.    Why not?

5         A.    My injuries weren't life-threatening. I

6     had bite marks, bruises. It's not like I had broken

7     bones or something. You know, basically, I had a

8     black eye, bite marks on my arm. I should have gone

9     in for the bite marks to get penicillin or something

10    like that or whatever. I wasn't -- you know what I

11    mean? I wasn't, you know --

12         Q.    What care then did you expect to be given

13    when you requested it?

14         A.    At the police department?

15         Q.    Yes.

16         A.    I wanted a record of the injuries from the

17    police department, and I wanted pictures taken at

18    the police department to show what injuries were

19    inflicted upon me by Ms. Casey so it would have been

20    on the record when the proceedings further proceeded

21    with the court issue. That's a copy of the report

22    right there.

23         Q.    That you're here making reference to?

24         A.    Yes.

25         Q.    Exhibit B to your complaint?

161

1    that are involved in this lawsuit?

2        A.   That's not really involved in that

3    lawsuit.  This lawsuit starts to pick up on 7/9/02

4    when they didn't put in my 911 call into the Police

5    Report and they withheld evidence from the Police

6    Report which starts my 14th Amendment Due Process

7    Violation.

8        Q.   You covered that very thoroughly with

9    Patty.  That's on July 9th?

10        A.   That starts my conspiracy because you have

11    four different officers arriving on the scene, a

12    sargeant and a lieutenant.  Nobody reports that I

13    made the call of being assaulted or that I was

14    assaulted at that night in time.  I had made the

15    complaint of being assaulted.  They refused to take

16    my written statement from me because I was assaulted,

17    and I have numerous different people involved.

18    That's a conspiracy.

19        Q.   We will be here all day, all day tomorrow

20    and most of next month if we're going to re-cover all

21    the same ground that you covered for hours and hours

22    with Patty.  Okay.  I know all about your complaints

23    about not being listed as the complaintant.

24        A.   It's not complaints, it's facts.

25        Q.   Mr. Quint, I know --

NIZIANKIEWICZ & MILLER REPORTING SERVICES

174

1       A.   Yes.

2       Q.   Okay.  So there was -- at the time that

3   you applied for a Protective Order to keep her away

4   from you, she already had an order --

5       A.   No.  I didn't want a Protective Order to

6   keep her away from me.  I wanted an order to protect

7   me so she couldn't say I popped up again or whatever

8   so she couldn't have me arrested for no reason

9   without me being around.

10       Q.   Okay.  But what I'm trying to establish

11   here is at the time that you first applied for

12   whatever Protective Order you applied for against

13   her, there was already one in place in her favor

14   against you?

15       A.   Yes, because of the original Police

16   Report --

17       Q.   Gotcha.

18       A.   -- wasn't properly done otherwise I would

19   assume that Judge Sequino and the Family Relations

20   order would have given me the Protective Order not

21   her, since it was court issued --

22       Q.   Right.  There is a section of your

23   Complaint labeled "Facts," and the second one reads,

24   "Mr. Quint was deprived of his liberty and his person

25   was seized without warrant by Defendants City of

NIZIANKIEWICZ & MILLER REPORTING SERVICES

175

1    Milford Police Officers Dunaj, Vitti, Moore, Esposito

2    and Marchner."

3        A.    Those are the officers that arrested me at

4    the bar.

5        Q.    M-A-R-C-H-N-E-R.  "Violating his right to

6    be secure in his person and not to be seized without

7    a warrant issued upon probable cause."  What do you

8    base that on?

9        A.    What's that?  What do I base that on?  I

10   was sitting in a bar, they came and arrested me

11   without a warrant.

12       Q.    So this is the July 20, 21 --

13       A.    Yeah.

14       Q.    -- incident?

15       A.    You can't arrest me without a warrant.

16       Q.    And -- let me ask you a question -- did

17   they indicate to you at the time what they were

18   arresting you for?

19       A.    I don't remember if they did or they

20   didn't.

21       Q.    Did you come to learn that you were being

22   arrested for violating the Protective Order?

23       A.    For allegedly violating a Protective

24   Order, whatever, later on, yeah, when they got me to

25   the police station, yes.

NIZIANKIEWICZ & MILLER REPORTING SERVICES

176

1  Q. Did you go to trial on that charge?

2  A. Yes, I did.

3  Q. And were you convicted of it?

4  A. For the moment, yes.

5  Q. Okay.  You're currently appealing that

6 conviction?

7  A. Yes, I am.

8  Q. Okay.

9  A. My brief was filed March 5th.

10  Q. Number 3 in the "Fact" section, "Mr. Quint

11 was subjected to inhumane conditions by Defendants

12 Dunaj and Moore when they placed him in a holding

13 cell without mattress, blanket and sheets subjecting

14 him to punishment without due process."  That was --

15 was this a holding cell right at the police station?

16  A. Yes.

17  Q. Okay.  How long were you there?

18  A. Overnight.

19  Q. Okay.  Was this the night they picked you

20 up at the bar?

21  A. Yeah.

22  Q. Okay.  So I think you testified earlier

23 that they picked you up at the bar somewhere around

24 closing time, so probably 12:30, one, somewhere in

25 there?

NIZIANKIEWICZ & MILLER REPORTING SERVICES

187

1    the male in the relationship, these incidents weren't

2    documented or anything else to show that I was the

3    person that was being abused by the spouse or

4    whatever else like this.

5        Q.    Yep.

6        A.    Because I was the male in the situation,

7    because I'm the male in the situation, I was suppose

8    to take it all and leave and everything else like

9    this because I'm the one who's being physically

10   abused by the female.

11       Q.    That was the first one.  The Milford PD

12   came down and they took you to the Stratford PD?

13       A.    No.  They took me to Milford Police

14   Department, had me there until Stratford Police

15   Department came and picked me up, and I was asking

16   for medical attention while I was at Milford to

17   document the injuries that I had at this point in

18   time, which I wasn't able to do until I got to the

19   Milford Police Department.  Then when I got to the

20   jail, I'm pretty sure that they had pictures taken,

21   and it was further documented at that point in time.

22       Q.    Do you have those pictures?

23       A.    I'm trying to get them now.

24       Q.    And if I recall correctly, and I know

25   there were two separate times when you claimed

NIZIANKIEWICZ & MILLER REPORTING SERVICES

188

1   injury --

2       A.   I didn't claim them.  They're documented

3   injuries.

4       Q.   On that first occasion, your injuries were

5   bruises and scratches, things like that?

6       A.   Bruises, scratches.  Some cuts, blood was

7   coming so scratches.

8       Q.   And that was at that time that you got

9   picked up on the Failure to Appear Warrant out of

10  Stratford, right?

11      A.   Yeah.

12      Q.   When you got down to Stratford PD that I

13  guess it was nighttime?

14      A.   Daytime.

15      Q.   Daytime.

16      A.   It was in the afternoon.

17      Q.   All right.  Did they hold you overnight or

18  did they release you?

19      A.   I was held over by the Stratford Police

20  Department.  The Stratford Police Department brought

21  me to the North Avenue Jail in Bridgeport.  That was

22  overnight.  I got arraigned in the morning then I

23  made bond.

24      Q.   After the arraignment?

25      A.   I don't remember if I made arraignment or

NIZIANKIEWICZ & MILLER REPORTING SERVICES

189

1   if I made bond from the jail. I don't know if I made

2   it that night or if I waited until the next morning

3   for arraignment.

4        Q.   At any rate --

5        A.   I'm trying to get those records now.

6        Q.   But I'm just trying to find out what your

7   best recollection is. At any rate, would it be fair

8   for me to presume that probably within 24 hours of

9   being picked up you were back out?

10       A.   Yeah.

11       Q.   Whether it was that night or the next

12  morning?

13       A.   Yes.

14       Q.   Okay. After you got out, whether it was

15  that same night or the next day, did you then go seek

16  medical treatment? Did you go to the hospital or

17  anything?

18       A.   No, because I had the medical treatment at

19  the jail, and I had -- the EMS had seen me while I

20  was at Bridgeport -- while I was at the Stratford

21  Police Department.

22       Q.   The second incident where you requested

23  medical treatment and didn't get it, which one was

24  that? Was that the July 9th incident?

25       A.   Yes.


NIZIANKIEWICZ & MILLER REPORTING SERVICES

190

1      Q.   Okay.  That's the one where you made the

2   911 call and they --

3      A.   I made the complaint of being assaulted by

4   my girlfriend, yes.

5      Q.   -- and they never listed you as the

6   complainant.  That's the one we're talking about?

7      A.   Where they never -- where they never --

8   yes.  Where they never reported that I was the victim

9   and where they never reported that I made the call

10  and --

11     Q.   Right.  So they brought you in that night,

12  the Milford PD?

13     A.   Yes.

14     Q.   They took you down to the station?

15     A.   Yes.

16     Q.   Did they book you on a charge?

17     A.   Yes.

18     Q.   Okay.  And they put you in a holding cell?

19     A.   Yes.

20     Q.   Did they keep you overnight?

21     A.   No.  They released me on a promise to

22  appear.  They told me they weren't going to release

23  me on a promise if I kept pushing the issue to have

24  Ms. Casey charged with assault third and if I kept

25  requesting medical attention.  They weren't going to

NIZIANKIEWICZ & MILLER REPORTING SERVICES

191

1    release me.

2          Q.    Okay.  But they did release you that night

3    on a promise to appear, right?

4          A.    Yes, for the breach of peace charge which

5    was ultimately dismissed.

6          Q.    Okay.  Now, do you remember approximately

7    what time it was that you made the call and they came

8    down and they took everybody down to the station?

9    Was this early evening, mid evening, late?

10          A.    Early morning, 2:00 o'clock in the

11    morning, 2:15 in the morning.

12          Q.    All right.  So when they released you, was

13    it morning yet?  Was the sun up?

14          A.    Just about coming up, 4:00 o'clock in the

15    morning.

16          Q.    Okay.  So the whole incident between the

17    cops coming over, bringing everybody down, booking

18    then releasing, that was just a couple few hours,

19    two, three hours, somewhere in there?

20          A.    Something like that.

21          Q.    All right.  When they released you on your

22    promise to appear that morning, did you go seek

23    medical treatment?  Did you go to the hospital, see a

24    doctor, anything like that?

25          A.    I walked from Milford to Stratford to my

NIZIANKIEWICZ & MILLER REPORTING SERVICES

192

1   mother's house at that point in time.

2        Q.   Okay.  So the answer is no, you didn't go

3   see anybody?

4        A.   Did I seek medical attention?  No.  At

5   that point in time I was frustrated, everything else.

6   I was trying to get the police.  I called back the

7   police station again after I was released trying to

8   see if I could have Ms. Casey charged again with

9   assault third charges at that point in time, which if

10  I could get my phone records those -- that would

11  show.

12       Q.   Okay.  Paragraph 7, "All Defendants denied

13  the Plaintiff equal protection of the law."  Is that

14  what we've been talking about, the whole you would

15  have been treated differently if you were a woman?

16       A.   I would have been treated differently.  I

17  wouldn't have had statements fabricated against me.

18       Q.   Do you claim that the statements were

19  fabricated because you're a man and they wouldn't

20  have been fabricated if you were a woman?

21       A.   I don't think Mr. Dunaj would have

22  fabricated statements against me.  I don't know so

23  much about being a male.  Might not have been

24  fabricated against me if I was the female in the

25  situation.


                NIZIANKIEWICZ & MILLER REPORTING SERVICES

197

1  question.  By the definition of conspiracy --

2      Q.   I didn't ask you for the definition of

3  conspiracy.

4      A.   You're asking me how it came about that

5  they conspired against me.  They were conspiring

6  against me.

7      Q.   You told me that, and I'm trying to make

8  sure that I understand what your claim is.  You told

9  me --

10     A.   I told you what --

11     Q.   -- you told me on 7/9/02, these four

12  officers responded to that 911 call that you placed,

13  and if I interpreted you correctly, I want to make

14  sure that I'm interpreting you correctly, in your

15  complaint, your conspiracy claim arising out of that

16  incident, the 7/9/02 incident, is that these four

17  guys all came down, responded to this call, and none

18  of them issued a report listing you as the victim,

19  complainant, the person who was assaulted or the

20  person who called the police in the first place, is

21  that right?  Am I interpreting you correctly?

22     A.   Yes.  They all withheld facts from the

23  reports and they all, per the interrogatories I filed

24  on you and the answers that you gave me to the

25  Interrogatories, the report on Mr. Dunn is a report

NIZIANKIEWICZ & MILLER REPORTING SERVICES

198

1   that all of them stated what occurred that night.  By

2   them all supporting the report that Mr. Dunn made at

3   that point in time on that night right there, they're

4   all conspiring, they're all supporting the same

5   information, and underneath the definition of

6   conspiracy -- we come up to that again.

7         Q.    I've heard your definition of conspiracy

8   enough that I can throw it right back at you.

9         A.    Cool.

10        Q.    But I just need to make sure that I

11   understand.  Because Dunn authored the report and the

12   other three signed off on it, that, if I understand

13   you correctly, that is what you term the conspiracy

14   because Dunn's report is lacking certain information

15   that you feel should be in there, right?  Am I right?

16   Yes or no?

17        A.    Not that I feel for one.  For one, it's

18   not that I feel should be in there.

19        Q.    Okay.

20        A.    For one, it's information that's facts

21   that he did not report.

22        Q.    Fine.  All right.  Because those facts are

23   not in Dunn's report and the other three guys adopted

24   his report, that is what you are claiming constitutes

25   this conspiracy amongst those four officers arising

NIZIANKIEWICZ & MILLER REPORTING SERVICES

199

1    out of the 7/9 incident, is that right?

2         A.    Well, the fact is that none of the

3    officers tried to report the incident, report that I

4    called up, I never assaulted anybody else, that I was

5    -- that I was assaulted.  None of the officers

6    reported the facts on 7/9/02.

7         Q.    Right.  They all signed off on Dunn's

8    report, right?

9         A.    None of them chose to correct the facts,

10   yeah.

11        Q.    I want to make sure that I can summarize

12   your claim of conspiracy arising out of the 7/9

13   incident in a way that I understand.  If I understand

14   you correctly, on 7/9 you had these four officers

15   that come down, one issues a report, and that's Dunn.

16   Dunn doesn't say anything in his report about you

17   being the victim, you being the complainant, you

18   being the guy who called 911, and because nobody

19   corrected him on that, the other three signed off on

20   his report, that makes it a conspiracy against you,

21   am I right?

22        A.    More than one person involved in it.

23        Q.    Sir, am I right?  This is not a trick

24   question.  I'm trying to understand what you are

25   saying.  Did I summarize you accurately?

NIZIANKIEWICZ & MILLER REPORTING SERVICES

200

1       A.    There's more than one person involved in

2   an incident.   When there's more than one person

3   involved in an incident or making a report against

4   me, that's a conspiracy.   Conspiracy is when more

5   than one person is perpetrating something against

6   another person.

7       Q.    What else, if anything, do you claim is

8   evidence of a conspiracy against you amongst these

9   nine Defendants, or does it all arise out of this 7/9

10  incident?

11      A.    The majority of it and that they continued

12  to -- continued to falsify information against me

13  after this one with Officer Dunaj and the other

14  officers.

15      Q.    Dunaj filled out the application for the

16  warrant that had the conversation that never took

17  place, right?

18      A.    Yeah.   At the wrong number and everything

19  else.

20      Q.    Right.   Are you claiming that any of the

21  other Defendants took part in falsifying that

22  application with Dunaj?

23      A.    No, but they took part in arresting me on

24  one night without a warrant.

25      Q.    All right.   So you don't have any --

NIZIANKIEWICZ & MILLER REPORTING SERVICES

202

1          A.    For this deposition so I can't -- I don't

2     know at this point in time.

3          Q.    Right.  You're the Plaintiff, right?

4     You're the one who lived through all this.  Is that

5     right, yes or no?

6          A.    Yeah.  We're both aware of that.

7          Q.    Other than the reports not containing the

8     facts that they should have arising out of the 7/9

9     incident and the warrant application that Dunaj

10    filled out a couple of months later, is there

11    anything else that you point to as evidence of a

12    conspiracy against you amongst these nine officers?

13         A.    No.  I'm not sure at this point in time

14    as, again, I would have to say I don't have all the

15    facts with me at this point in time.  I wasn't

16    prepared for this point in time today because I

17    wasn't given any notification of this deposition

18    prior to you showing up today.  I didn't think -- I

19    was expecting somebody else here at this point in

20    time.

21         Q.    Take that as a no.  All right.  All right.

22    Now, one thing that's unclear in this case is whether

23    there's any real difference between your equal

24    protection claims and your discrimination claims.

25    Are they both based on the fact that you were treated

NIZIANKIEWICZ & MILLER REPORTING SERVICES

203

1    as you were treated, you say because you're a man

2    instead of a woman?

3         A.    What's that, the discrimination and the

4    equal protection?

5         Q.    Equal protection, yeah.  Are they both

6    based on that premises that had you been a woman you

7    would have been treated differently?

8         A.    No.  The equal protection, no, if I was a

9    woman -- the claim that I would have been treated

10   differently if I was a woman is they based on the

11   same facts?  Are they based on the same --

12        Q.    Yeah, that's what I'm asking.  What's the

13   basis of your -- I think I understand that both your

14   equal protection claims and your discrimination

15   claims arise out of the fact that you were treated as

16   you were treated because you're a man, and had you

17   been a woman, you would have been treated

18   differently, is that right?

19        A.    That's what the discrimination claim falls

20   under.  The due process violation, well, those are

21   numerous.  That's not just one single due process

22   violation because the due process violation comes up

23   with Mr. Dunaj not -- falsifying information.

24        All the due process information is facts being

25   left out of the report, which is exculpatory

NIZIANKIEWICZ & MILLER REPORTING SERVICES

204

1    information which was not provided to the Judge.  The

2    tapes being withheld, the 911 call being withheld

3    through all this information, which was -- which

4    didn't enable the Judge -- we've been through all

5    this -- which didn't allow the Judge and the Family

6    Relations to properly treat me the day after the

7    original incident of 7/9/02, because if all the

8    information was issued properly on 7/9/02, there

9    probably wouldn't have been any other incidents

10   because the Protective Order wouldn't have been

11   issued to Mrs. Casey.

12        Q.    I think I understand that.  I think I

13   understand what your due process complaints are, and

14   I understand what your discrimination complaints are.

15   What I'm trying to understand is if there's any

16   difference between your discrimination claims and

17   your equal protection claims.  See what I'm saying?

18        A.    Do they arise out of the same issues are

19   you trying to state to me, or what do you mean?

20        Q.    Yeah.  As I understand your claims, it

21   looks like both the discrimination claims and the

22   equal protection claims arise out of your allegation

23   that had you been a woman rather than a man you would

24   have been treated differently, and you gave me a

25   laundry list of ways that you feel you would have

NIZIANKIEWICZ & MILLER REPORTING SERVICES

**B**

MILFORD POLICE DEPARTMENT
INCIDENT REPORT

INCIDENT TYPE:DOMESTIC DISPUTE/NON VIO/      PREMISE TYPE:RESIDENCE/HOME
LOCATION:48          MERWIN AV                          APT/LOT            AREA A3
BUSINESS:                                    WEAPON TYPE: NONE
BEGIN DATE: 5/07/02   BEGIN TIME:2009   END DATE: 5/07/02   END TIME:2009
CENSUS TRACT:              SUB-DIVISION:
COMMENTS:  DISPUTE BETWEEN FRIEND FRANCIS CASEY AND EX-BOYFRIEND NAMED

          RICHARD QUINT 3/17/65 WANTED OUT OF STRATFORD
          JH
CASE STATUS:CLEARED BY ARREST
REPORTING OFFICER:  FREEMAN,MARK                    REPORT DATE: 050702


SUPERVISOR                    —


******************************** P E R S O N S ********************************

PERSON #:001    STATUS: COMPLAINANT
NAME: DEMARINIS          AUDREY                        RACE: WHITE
SEX:FEMALE  DOB: 0/00/00  AGE:   HGT:    WGT:    HAIR:
EYES:             FACIAL HAIR:              BUILD:      COMPLEXION:
ADDRESS:REFUSED
EMPLOYMENT:
OCCUPATION:
SOC SEC: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   PHONE (RES):415-7437   PHONE (BUS):000-000-0000

PERSON #:002    STATUS: VICTIM ADULT
NAME: CASEY          FRANCINE                          RACE: WHITE
SEX:FEMALE  DOB: 2/16/67  AGE:   HGT:    WGT:    HAIR:
EYES:             FACIAL HAIR:              BUILD:      COMPLEXION:
ADDRESS:48 MERWIN AV              MILFORD                          CT
EMPLOYMENT:
OCCUPATION:
SOC SEC: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   PHONE (RES):882-0168   PHONE (BUS):000-000-0000

PERSON #:003    STATUS: WANTED PERSON
NAME: QUINT          RICHARD          R            RACE: WHITE
SEX:MALE   DOB: 3/17/65  AGE:   HGT:    WGT:    HAIR:
EYES:             FACIAL HAIR:              BUILD:      COMPLEXION:
ADDRESS:240 FERNDALE AV          STRATFORD                        CT
EMPLOYMENT:
OCCUPATION:
SOC SEC: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   PHONE (RES):377-0004   PHONE (BUS):000-589-9328

PERSON #:004    STATUS: POLICE OFFICER
NAME: MARSCHNER          B                            RACE: WHITE
SEX:MALE   DOB: 0/00/00  AGE:   HGT:    WGT:    HAIR:
EYES:             FACIAL HAIR:              BUILD:      COMPLEXION:
ADDRESS:
EMPLOYMENT:
OCCUPATION:
SOC SEC: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   PHONE (RES):000-0000   PHONE (BUS):000-000-0000

PERSON #:005    STATUS: POLICE OFFICER
NAME: STRATFORD POLICE DEPT                       RACE: N/A - BUSINESS
SEX:N/A -   DOB: 0/00/00  AGE:   HGT:    WGT:    HAIR:
EYES:             FACIAL HAIR:              BUILD:      COMPLEXION:
ADDRESS:
EMPLOYMENT:

Case 3:02-cv-02053-AVC    Document 150-5    Filed 09/01/2005    Page 23 of 32

OCCUPATION:
SOC SEC: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    PHONE (RES):000-0000    PHONE (BUS):000-000-0000

******************************* N A R R A T I V E *******************************

LOCATE TELETYPE SENT:   OCA #01080    MSG #2103797     Writer and Off.
Marschner responded to 48 Merwin Avenue on a domestic dispute complaint.
Upon arrival, writer met with complainant Audrey Demarinis who stated she
had called due to the fact that her girlfriend, Francine Casey, wanted her
boyfriend Richard Quint out of the house.   Ms.
Demarinis stated when she arrived on scene, Francine was highly upset and
Ms. Demarinis stated Francine was next door at 46 Merwin Avenue.   Francine
and Richard were yelling at each other between the two residences.   Ms.
Demarinis stated she advised Francine she had called the police, and
Francine got very upset with her.   Demarinis stated that Richard also got
upset with her when he was advised the police were enroute.   Demarinis
stated that both parties became very upset with her for interfering and
they did not want the police called.   Ms. Demarinis was highly upset and
refused to answer any further questions, and left the scene.
Writer spoke with Francine and Richard in regard to the verbal argument.
Francine advised writer that Richard is not her boyfriend, that he is just
a friend that stays at her residence from time to time.   She stated she
came home on this date after taking her daughter out to dinner, and
Richard was upset because she was not home.   Francine stated there was no
violence during the dispute, just verbal argument, and she wanted Richard
to leave the residence.   She stated she took her eight-year old daughter
and went next door to 46 Merwin Avenue and Richard began removing some of
his stuff from the house.
Mr. Quint advised the writer that he had been dating Francine for
approximately 2 1/2 to 3 months, and stated that last night Francine got
highly upset with him due to the fact that she was drinking a lot and he
poured out her drink.   He stated the whole argument was silly and that the
police did not need to be called.   Richard stated that the only reason why
Francine's friend Audrey Demarinis called was that she was also drunk and
does not like him.
Writer ran both parties involved through NCIC.   Francine was negative NCIC
while Richard Quint showed an active warrant out of Stratford.   Comm Room
verified the warrant with Stratford Police Department.   Writer was advised
that the warrant was for FTA 1st Degree regarding narcotics violations
with a $20,000.00 bond.
At approximately 2050 hours, Richard Quint was placed under arrest for the
active warrant in Stratford.   Richard was placed in doublelocked
handcuffs, searched incident to arrest, and transported to Milford Police
Headquarters booking area by Off. Marschner in patrol car #29.
Upon arrival in booking, Richard Quint's personal property was inventoried
on a Prisoner Property form and secured locker #35.   Writer completed a
blue booking slip.   He was placed in holding cell H-3 pending Stratford
Police Department's arrival.
A locate teletype was sent.
Writer was advised that Richard Quint had no further outstanding warrants.
At approximately 2145 hours, Mr. Quint was released to the custody of the
Stratford Police Department on their active warrant.   Det.
Zolla provided writer with a copy of their warrant for Richard Quint,
which accompanies this report.
At the commen time of this report, writer has no further information to add and
requests this case be closed.
COPY:    DETECTIVE DIVISION.

```
CLEARANCE CODE  _____  .
STENO:  lmd
```

RE-ARREST WARRANT AND APPLICATION
JD-CR-67  Rev. 6-97  C.G.S. 54-1h, 54-2a  Pr. Bk. 684

Race: C  Sex: M

STATE OF CONNECTICUT
SUPERIOR COURT

INSTRUCTIONS TO CLERK

*Obtain required signatures and distribute as indicated on the bottom.*

p. ___1___ of ___1___

| DOCKET NO. | NAME OF ACCUSED | DATE OF BIRTH | G.A | HELD AT |
|---|---|---|---|---|
| F02BCR0101704235 | QUINT RICHARD ROBERT | 03/17/65 | 08 | BRIDGEPORT |

| U.A.R/SUMMONS/TICKET NO. | DATE OF ARREST | P.D. CASE NO. | ARRESTING AGENCY CODE | DATE WARRANT ORDERED |
|---|---|---|---|---|
| 01297419 | 06/27/2001 | | 0138 | 04/22/2002 |

Agcy Name: TOWN OF STRATFORD
LOCAL POLICE

The undersigned, being duly sworn, deposes and says:

1. The above-entitled Warrant/Summons/Ticket was served on the accused charging the commission of the following offenses, motor vehicle violation(s) or infraction(s), as more fully appears in said Warrant/Summons/Ticket, which is hereby incorporated by reference:

| STATUTE | DESCRIPTION | CLASS/TYPE | |
|---|---|---|---|
| 21a-279(a) | POSSESSION OF NARCOTICS<br>GUILTY ON 08/20/2001 | U | F |
| 21a-278(b) | SALE OF CERTAIN ILLEGAL DRUGS<br>NOLLED ON 08/20/2001 | U | F |
| 21a-267(a) | USE OF DRUG PARAPHERNALIA<br>NOLLED ON 08/20/2001 | C | M |
| 53a-32 | VIOLATION OF PROBATION | | X |

Address: 240 FERNDALE AVE, STRATFORD, CT 00000

2. The said accused was directed to appear in the above-entitled court for proceedings in said case.

3. The accused failed to appear on _____04/22/2002_____ when legally called according to the terms of his/her bail bond or promise to appear.

4. The court ordered that a warrant be issued for the arrest of the accused for failure to appear and set the following conditions for release:

AMOUNT OF BOND:  $  20000

In addition to the Offenses charged in Paragraph #1 above, the Accused is also charged with FAILURE TO APPEAR 1ST DEGREE/C.G.S. 53a-172

OTHER:

* VIOLATION OF PROBATION CASE *

EXTRADITION BOUNDARIES

| SIGNED (Affiant) | DATE SIGNED | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) | SIGNED (Judge, Clerk, Comm. of Sup. Ct.) |
|---|---|---|---|
| | 4-25-02 | 4-25-02 | |

**APPLICATION**

Based upon the foregoing, the undersigned prosecuting authority makes application for the issuance of a warrant for the arrest of the accused.

| SIGNED (Deputy Assistant State's Attorney) | DATE SIGNED |
|---|---|
| Mary C Coud | 4-30-02 |

**FINDING AND WARRANT**

The foregoing Application for... considered by the undersig... offense has been committe... of a warrant for the re-arre... TO: Any proper officer of...
BY AUTHORITY OF T... named accused and exec...

WARRANT INVESTIGATION IS BEING CONDUCTED. PRIOR TO EXECUTING THIS WARRANT PLEASE ATTEMPT TO CONTACT DET. JERRY PINTO AT:
HOTLINE #1-800-438-1284 OR
PAGER # 1-800-201-5625 PIN#0662

...to said Application, having been submitted to and ...) that there is probable cause to believe that an ...ore, that probable cause exists for the issuance ...

...y commanded to arrest the body of the within-

| SIGNED (A Judge of the Superior Court) | DATE SIGNED |
|---|---|
| | 5/1/02 |

**RETURN ON ARREST WARRANT**

STATE OF CONNECTICUT, COUNTY OF _____ ss.

DATE OF SERVICE

Then and there, by virtue of the within and foregoing complaint and warrant, I arrested the body of the within-named accused and read the same in the hearing of the accused; and said accused was released pursuant to the court ordered conditions or is here in court for examination.

| ATTEST (Officer's signature and title, if applicable) | SHIELD NO. | DEPARTMENT |
|---|---|---|
| | | |

C

TOWN OF STRATFORD
STRATFORD EMERGENCY MEDICAL SERVICE
900 Longbrook Avenue | Stratford, Connecticut 06614 | (203) 385-4060 | www.stratfordems.com

TO WHOM IT MAY CONCERN:

*PHOTO COPY FEE*.............................................................$ .50

PLEASE MAKE CHECK PAYABLE TO:          TOWN OF STRATFORD/EMS

                                       900 LONGBROOK AVENUE

                                       STRATFORD, CT  06614

\* Stratford EMS did not bill for service/treatment in 2002.

# STRATFORD EMERGENCY MEDICAL SERVICE C138P1

| UNIT # 321 | DATE OF SERVICE 5-7-02 | DISPATCH NUMBER |

| PATIENT LAST NAME QUINT | FIRST RICHARD | MIDDLE R | AGE 37 | DATE OF BIRTH 3-17-65 | C-MED NUMBER 2085 |

| PATIENT HOME ADDRESS 240 FERNDALE AVE | CITY STRATFORD | STATE CT | ZIP 0664 | DATE OF INJURY Same | TIME CALL RCVD |

| INCIDENT LOCATION 900 LONGBROOK AVE, PD LOCK-UP | ZIP CODE | TIME OF ONSET 2/3 - 2 HRS. | NOTIFIED 2234 |

☐ STREET/HIGHWAY ☐ HOME ☐ BUSINESS/INDUSTRY ☑ PUBLIC PLACE ☐ OTHER

| WORK RELATED ☐ Y ☑ N | SEX ☑ M ☐ F | BEGAN RUN 2235 |

| ☐ F.D FIRST RESPONDER | DISPATCH TIME | TIME ARRIVED | ☐ CPR ☐ EXTRICATION ☐ LIFT/MOVE ☐ BLEEDING CONTROL ☐ | ON SCENE 2235 |

PATIENT PROTECTIVE DEVICES
☐ HELMET ☐ SEAT BELT ☐ AIRBAG ☐ GOGGLES ☐ GLOVES ☐ CHILD SEAT

| EXTRICATION TIME | DEPARTED |

| PATIENT CHIEF COMPLAINT PAIN TO BACK (L) LOWER LEG | MECHANISM OF INJURY ASSAULT | PATIENT PHYSICIAN NONE | ARR DESTINATION |

HISTORY / REMARKS
37 y/o ♂ IN P.D. CUSTODY c/o PAIN TO BACK (L) SHOULDER AND

(L) LOWER LEG 2° ASSAULT BY GIRLFRIEND APPROX 2 HRS PRIOR. PT WANTED

EVALUATION - WOUND TO BACK HAD SCAB, WOUNDS TO LEG - DRESSING

APPLIED (BLEEDING HAS STOPPED, CLOTTING HAS BEGUN). PT A+O x2, (A) VFU.

VITALS TAKEN + NOTED. PT STATES HE HAS BEEN DRINKING (ETOH) (~2100).

PT WANTED INJURIES "DOCUMENTED": ABRASIONS TO (L) LOWER LEG, SCRATCH

+ "BITE" TO BACK/(L) SHOULDER. PT SIGNED SVC REFUSAL.

| BACK IN SERVICE 2248 |

| PATIENT MEDICATIONS ∅ | ALLERGIES ∅ |

EYE OPENING
4 ☑ SPONTANEOUS
3 ☐ TO VOICE
2 ☐ TO PAIN
1 ☐ NONE
(15)

VERBAL RESPONSE
5 ☑ ORIENTED
4 ☐ CONFUSED
3 ☐ INAPPROPRIATE WORDS
2 ☐ INCOMPLETE WORDS
1 ☐ NONE

MOTOR RESPONSE
6 ☑ OBEYS COMMANDS
5 ☐ LOCALIZES PAIN
4 ☐ WITHDRAWS FROM PAIN
3 ☐ FLEXION FROM PAIN
2 ☐ EXTENSION FROM PAIN
1 ☐ NONE

| | DEFIB JOULES TO RHYTHM  DEFIB JOULES TO RHYTHM TECH |
| | IV FLUID    RATE/AMOUNT    GAUGE    L/R    TECH |

| TIME | BLOOD PRESSURE 170/80 | PULSE(RATE/QUAL) 80 | RESP(RATE/QUAL) 16 | MEDICATION DOSE1 TIME DOSE2 TIME DOSE3 TIME |

| TIME | BLOOD PRESSURE | PULSE(RATE/QUAL) | RESP(RATE/QUAL) | MEDICATION DOSE1 TIME DOSE2 TIME DOSE3 TIME |

| ☐ ECG | RHYTHM  ╳ | PACING RATE  TECH | MEDICATION DOSE1 TIME DOSE2 TIME DOSE3 TIME |

| CLINICAL IMPRESSION  INJURIES 2° ASSAULT? | MEDICATION DOSE1 TIME DOSE2 TIME DOSE3 TIME |

INTERVENTIONS
☐ CPR ☑ DRESS/BAND ☐ SHORT BOARD
☐ BAG MASK ☐ SLING/SWATHE ☐ K.E.D.
☐ O2 MASK ☐ TRACTION SPLT ☐ C-COLLAR
☐ O2 NASAL ☐ CARDBOARD SPLT ☐ IRRIGATION
☐ O2 NEBULIZER ☐ PILLOW SPLT ☐ SUCTION
☐ O2 PAPER BAG ☐ LONG BOARD ☑ REASSURANCE

| AIRWAY ☐ ORAL ☐ NASAL ☐ ET Size Depth | MEDICATION DOSE1 TIME DOSE2 TIME DOSE3 TIME |

ADDITIONAL REMARKS
N/A : ∅

| PRIORITY ☐ 1 ☐ 2 ☐ 3 | PHYSICIAN SIGNATURE |

CASE DISPOSITION
☐ BRIDGEPORT HSPT ☐ ST. VINCENTS HSPT ☐ MILFORD HSPT
☐ CALL CANCELLED ☑ SERVICE REFUSAL ☐ NO PATIENT
☐ STANDBY ONLY ☐ OTHER

| CREW CHIEF 9803 | DRIVER 9150 | ATTENDANT 4873 | OBSERVER |

| SUPPORT SERVICES | SIGNATURE OF PREPARER  PW 9803 | ALS SIGNATURE | ID NUMBER |

SERVICE COPY
TEAR OFF LINE



**SUPPLEᴍENTAL INFORMATION**

**NON-MEDICAL FOR OFFICIAL USE ONLY**

---

SUPPLEMENTAL INFORMATION:




Signature: _____

---

# REFUSAL OF SERVICE WAIVER FORM

**Directions:**    This waiver should be completed for any patient who either refuses care,  partial care, or after administering care refuses transportation to an emergency facility.  The front portion of this form must be completed for all patients.

| WHO ASSISTED IN AN EFFORT TO PROVIDE CARE? | ☒ PD | ☐ FD | ☐ SUPERVISOR | ☐ RELATIVE | ☐ PHYSICIAN NAME / TEL# _____ |
| ☐ MEDICAL CONTROL | ☐ OTHER | | | | |

| WHAT DID THE PATIENT REFUSE? | ☐ ALL CARE | ☐ EVALUATION | ☐ IMMOBILIZATION | ☐ STRETCHER | ☒ TRANSPORT | ☐ OTHER (EXPLAIN) |

WHAT REASON DID THE PATIENT GIVE FOR REFUSING?
*No need – wanted to get wounds evaluated.*

ADVICE AND RECOMMENDATION?    *Call EMS if needed in future.*

    I HAVE BEEN ADVISED OF MY CONDITION AND WAS OFFERED CARE AND/OR TRANSPORTATION TO AN EMERGENCY FACILITY.  THE ABOVE ADVICE AND RECOMMENDATION WAS EXPLAINED TO ME BUT I REFUSED THE CARE OFFERED. THEREFORE, I HEREBY RELEASE THE TOWN OF STRATFORD AND ITS AGENTS FROM ALL RESPONSIBILITY AND LIABILITY AND AM ASSUMING ALL RESPONSIBILITY FOR ANY ILL AFFECTS RESULTING FROM MY DECISION.

PATIENT SIGNATURE: X _____    CREW CHIEF SIGNATURE: _____ # 9803

# D

# STRATFORD POLICE

900 Longbrook Avenue
Stratford, CT 06614
385.4100
**Incident Report**
SCTO

## Vehicle Info:

| Vehicle No. | Vehicle Make | Vehicle Model | Vehicle Year | VIN | Primary Color | Secondary Color | Plate No. | State |
|---|---|---|---|---|---|---|---|---|
| No Vehicle Info Recorded for Incident #: 2002000010262 | | | | | | | | |

## Property

No Property Info reported for Incident #: 2002000010262

## Narratives:

**Narrative by: Patrol-8 Brian Zolla**

| Seq No: | Date & Time |
|---|---|
| 1 | 5/7/02 10:24:00PM |

I, Detective Zolla, report that officer Castro and myself were sent to Milford Police Department to pickup a Mr. Richard Quint DOB 03-17-65 on a FTA First Degree Warrant. Upon arrival we took custody of Quint from Officer Freeman. Quint was searched, handcuffed and transported to Stratford Police Headquarters where he was booked, fingerprinted, and photographed for FTA First Degree. His bond was court set at $20,000 and his court date is set as 05-14-02. Quint was afforded telephone calls prior to being placed in cell number 10.

Prior to being placed in the cell Quint was seen by EMS personnel at his request. He claimed to have cuts and scrapes from a domestic dispute earlier in the evening. EMS examined his injuries which were non-life threatening, bandaged what was appropriate, and then Quint was placed in the cell block. Both Dispatch and Sgt. Wilcoxson were notified of Quint's presence in the cell block.

The warrant was cancelled from NCIC, message number 2103830.

## Incident Notes:

**Create User ID:**

| Seq No: | Date & Time |
|---|---|

No Incident Notes Listed

## Incident Dispatcher Remarks:

**Create User ID: system**

| Seq No: | Date & Time |
|---|---|
| 1 | 05/06/2002 08:05:57 |

5/1/02 COURT ISSUED WARRANT FOR : A-171 FTA 1ST COURT SET BOND 20,000 RICHARD R QUINT M/W 3/17/65 240 FERNDALE AVE STRATFORD CT ENTER MESS#2101657 5/6/02 2:11 481

_Det. B Zolla_
Signature of Officer

Notarized, Subscribed, and Sworn to
This _____ Day of _____
By _____
Signature of Notary Public

Signature of Shift Commander