EXIBIT A

**DEPARTMENT OF POLICE**
MILFORD, CONNECTICUT

*P/c* **STATEMENT**    *Call 0:15 Police Station tape records*    *PAGE #1*

DATE 7-9-02    TIME 0405    PLACE 430 Boston Post Rd    REPORT NO. 15060-02

I, OFF C. DUNN _____, AGE 34, OF 430 Boston Post Rd, CITY OF Milford , STATE OF CT , MAKE THE FOLLOWING VOLUNTARY STATEMENT, WITHOUT THREAT OR PROMISE, KNOWING THAT IT MAY BE USED IN COURT. I have been advised that I have the right to consult with a lawyer, to stand mute, and to sign nothing. These rights I hereby waive. I make this statement to GA #20 _____, whom I know to be a member of the Milford Police Department.

On 7-9-02 at approx 0215 hrs, the writer : Off Barnke #36 were sent to a disturbance in the street in the area of #48 Merwyn Av. Milford Ct. Lt. Anderson #303 : Sgt Darby #323 also responded to the scene. Upon arrival a male was located in the area of #44 Merwin Av. He was identified as Richard Quint DOB 3-17-65. A female was located walking West bound on Merwyn Av : appeared to be upset. She was identified as Francine Casey DOB 2-11-67. Both were interviewed on scene, : later at Police H.Q's.

Francine Casey stated that she has been in a boy friend / girlfriend relationship with Richard Quint for a few months. She stated that they living together at #48 Merwin Av on : off for approx 1 month. She stated that on this date she had been out with a few (cont.)

I have read (or had read to me) the above statement and it is true to the best of my knowledge. I fully understand that if I make a statement that is untrue and which is intended to mislead a law enforcement officer in the performance of his official function, I will be in violation of Section 53a-157 of the Connecticut General Statutes. (A false statement is a Class-A Misdemeanor).

**I HAVE READ THE ABOVE STATEMENT AND IT HAS BEEN READ TO ME. IT IS THE TRUTH.**

Witness _____    Signed OFF C. Dunn #30

SUBSCRIBED AND SWORN TO BEFORE ME THIS 9th DAY OF July , 2002    _____
Notary Public

Page 1 of 3 pages.    ORIGINAL/COPY

# DEPARTMENT OF POLICE
## MILFORD, CONNECTICUT

*P/c* **STATEMENT** *PAGE #2.*

DATE _7-9-02_   TIME _0405_   PLACE _430 Boston Post RD_   REPORT NO. _15263-02_

I, _OFF C. DUNN_ , AGE _36_ , OF _430 Boston Post RD_ ,
CITY OF _Milford_ , STATE OF _CT_ , MAKE THE FOLLOWING VOLUNTARY
STATEMENT, WITHOUT THREAT OR PROMISE, KNOWING THAT IT MAY BE USED IN COURT. I have been advised that I have
the right to consult with a lawyer, to stand mute, and to sign nothing. These rights I hereby waive. I make this statement
to _GA # 22_ , whom I know to be a member of the Milford Police Department.

GIRL FRIENDS AT A RESTURANT. SHE STATED THAT SHE HAD 1
DRINK. THE WRITER COULD DETECT THE SMELL OF AN ALCOHOLIC BEVERAGE EMITTING FROM
HER BREATH. SHE STATED THAT WHEN SHE CAME HOME RICHARD QUINT
BECAME VERBALLY ABUSIVE & THREW HER KEYS OUT SIDE & INTO
HER HOUSE WHEN SHE COULD NOT FIND THEM. SHE STATED THAT
HE BEGAN TO PUSH HER AROUND & STARTED TO TEAR APART
THEIR HOUSE. SHE STATED THAT THIS ALSO TOOK PLACE OUT SIDE.
SHE STATED THAT SHE WAS AFRAID OF HIM & DECLINED TO
GIVE A WRITTEN STATEMENT OR PURSUE AN ARREST. THE WRITER
OBSERVED A SCRATCH & SWELLING TO HER LEFT WRIST AREA. SHE
DECLINED MEDICAL TREATMENT.

RICHARD QUINT STATED THAT THEY HAVE BEEN INVOLVED IN
A LIVE IN RELATION SHIP FOR APPROX 5 MONTHS. HE
STATED THAT SHE CAME HOME ON THIS DATE AT APPROX
130 AM & STARTED SMACKING HIM IN HIS SLEEP. (CONT.)

I have read (or had read to me) the above statement and it is true to the best of my knowledge. I fully understand that if I
make a statement that is untrue and which is intended to mislead a law enforcement officer in the performance of his
official function, I will be in violation of Section 53a-157 of the Connecticut General Statutes. (A false statement is a Class-A
Misdemeanor).

**I HAVE READ THE ABOVE STATEMENT AND IT HAS BEEN READ TO ME. IT IS THE TRUTH.**

Witness _____   Signed _OFF C. Du #30_

SUBSCRIBED AND SWORN TO BEFORE ME THIS _9th_ DAY OF _July_ , 200_2_   _[signature]_
                                                                        Notary Public

Page _2_ of _3_ pages   ORIGINAL / COPY

# DEPARTMENT OF POLICE
## MILFORD, CONNECTICUT

*Plc* **STATEMENT**    *Page 3*

DATE _7-9-02_    TIME _0405_    PLACE _430 Boston Post Rd_    REPORT NO. _15468-02_

I, _Off Dunn_ _____, AGE _39_, OF _430 Boston Post Rd_
CITY OF _Milford_ _____, STATE OF _CT_ _____. MAKE THE FOLLOWING VOLUNTARY
STATEMENT, WITHOUT THREAT OR PROMISE, KNOWING THAT IT MAY BE USED IN COURT. I have been advised that I have
the right to consult with a lawyer, to stand mute, and to sign nothing. These rights I hereby waive. I make this statement
to _6A 22_ _____, whom I know to be a member of the Milford Police Department.

He stated that she was drunk. He stated that she punched him in the face, left arm, right shoulder, left fore arm, kicked him in the legs & bit him. He stated the fight took place inside & out side in the street. He had swelling in his right eye area & bruising on his arms & body. He declined medical treatment & to give a written statement.

Francine Cassy further stated that Richard Quint caused these injuries to him self by punching himself.

Both individuals were placed under arrest for domestic violence at appx 0225 hrs. Both were transported to the police dept. for processing in double locked hand cuffs. In booking both were given notice of rights & charged with breach of peace 53a-181. Francine Cassy finger printed on van # 135 6433 & Richard Quint on van # 135613. Family violence report completed & victims rights card given. Both were given domestic court date of 7-9-02. Both negative ncic. Francine Cassy released on pta at appx 0350 & Quint on pta at 0410 hrs. Phone calls made.

I have read (or had read to me) the above statement and it is true to the best of my knowledge. I fully understand that if I
make a statement that is untrue and which is intended to mislead a law enforcement officer in the performance of his
official function, I will be in violation of Section 53a-157 of the Connecticut General Statutes. (A false statement is a Class-A
Misdemeanor).

## I HAVE READ THE ABOVE STATEMENT AND IT HAS BEEN READ TO ME. IT IS THE TRUTH.

Witness _____    Signed _Off C. Dunn #30_

SUBSCRIBED AND SWORN TO BEFORE ME THIS _9th_ DAY OF _July_, 2002    _____
                                                                    Notary Public

Page _3_ of _3_ pages    (ORIGINAL) COPY

Exibit B

```
 1   CR 02-0046892, CR 02-0246523

 2   --------------------------

 3   THE STATE OF CONNECTICUT :    SUPERIOR COURT

 4      Complainant,           :    GA 22

 5      -VS-                   :    OF ANSONIA/MILFORD

 6   RICHARD QUINT             :    AT MILFORD

 7      Defendant.            :    MAY 2, 2003

 8   --------------------------

 9

10

11   BEFORE:    THE HONORABLE WILLIAM CREMINS, JUDGE

12

13

14   APPEARANCES:

15              MARK HURLEY

16              Senior State's Attorney

17

18

19              THOMAS BUCCI, JR.

20              For the Defendant

21                              Gayle Beler,

22                              Court Monitor

23

24

25

26

27
```

1          THE COURT: For the record, these are the matters

2      of State of Connecticut versus Richard Quint. The two

3      docket numbers for sentencing today where trial had

4      been completed are CR-02-0046892 and CR-02-0046523.

5      We ask counsel to please state your appearances for

6      the record if you would.

7          MR. HURLEY: Mark Hurley for the State of

8      Connecticut, Supervisory Assistant State's Attorney.

9          MR. BUCCI: Thomas Bucci, for the Defendant,

10     Richard Quint.

11         THE COURT: Some preliminary matters, counsel,

12     that I would like to address first. There are a

13     number of motions that have been filed in these

14     matters, not just with respect to the two matters

15     that went to verdict, but other files pending. After

16     review, the Court is going to address what it finds

17     to be the proper post verdict motions even though

18     those motions reference incorrect file numbers.

19         Jury verdicts in these matters related to docket

20     numbers ending in 46892 and 46523 when the Defendant

21     was found guilty in Docket Number 46892 of two counts

22     of Violation of Protective Order in violation of

23     Connecticut General Stataute 53a-223 and two counts

24     of Criminal Trespass in the 1st Degree in violation

25     of 53a-107. The Court notes for the record that these

26     matters were pending prior to October 1st of last

27     year, so they are being treated under the prior

1       statute where with respect to the Violation of

2       Protective Order, these were A, Class A Misdemeanors.

3       He was further found guilty in Docket Number 46523 of

4       one count of Violation of Protective Order in

5       violation of Connecticut General Statute 53a-223, and

6       one count of Criminal Trespass in the 1st Degree in

7       violation of Connecticut General Statute 53a-107.

8            I'll start with the motions filed on this matter

9       referring to other pending cases. The Court will

10      address those motions based on the Court's

11      determinations of the motions that apply again to

12      post verdict matters.

13           There is a Motion For New Trial dated March 12,

14      2003 in reference to Docket Number 46096. The Court

15      is treating that as a Motion For a New Trial on these

16      matters. Motion For a New Trial is covered by

17      Practice Book Section 42-53 and 42-55. The grounds

18      for granting a motion for a new trial under

19      Connecticut Practice Book 42-53 are for an error by

20      reason of which the Defendant is constitutionally

21      entitled to a new trial; or for other error which the

22      Defendant can establish materially injurious to him.

23      The Court has reviewed the proceedings in this

24      matter. The Court finds no basis for the granting of

25      the Defendant's motion, no constitutional error nor

26      any new evidence nor has the Defendant established

27      that there is error materially injurious to him in

```
1   CR-02-0046892, CR 02-0246523

2   --------------------------

3   THE STATE OF CONNECTICUT :    SUPERIOR COURT

4        Complainant,         :    GA 22

5        -VS-                  :    OF ANSONIA/MILFORD

6   RICHARD QUINT              :    AT MILFORD

7        Defendant.            :    MAY 2, 2003

8   --------------------------

9

10

11  TRANSCRIPT CERTIFICATION

12

13       I, Gayle Beler, Court Monitor for the GA 22 of

14  ansonia/Milford, do certify that the foregoing transcript is

15  a true and accurate transcription of the official recordings

16  made of said matter.

17       Dated on the 2nd day of May, 2003, in the City of Milford,

18  Connecticut.

19

20

21

22

23                              Gayle Beler,

24

25                              Court Monitor
```

Exibit C

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT
## At HARTFORD

RICHARD R. QUINT
    Plaintiff

VS.

A. DUNAJ, ET AL
    Defendants

Inmate #123433
: CIVIL ACTION NO. 3-02-2053 (AVC)(TPS)
:
:
:
:
:
: JUNE 10, 2005

*Received on 6/14/05*
*R.Q.*

## DEFENDANTS' RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

The Plaintiff pursuant to F.R.C.P. submits the following admissions to the defendants. Requesting the defendants to either admit or say under oath, within 30 days of this request.

1.)    Admit. Defendants Dunn, Bethke, Lt. Anderson, & Sgt. Darby. That Mr. Quint on 7/9/02 called 911 to Milford Police Department, making complaint of assault by his girlfriend.

**The defendants admit that on 7/9/02 an anonymous call came into the dispatcher at the Milford Police Department regarding the disturbance between Mr. Quint and Francine Casey. The defendants further admit that subsequent to this call another call came in to the dispatcher at the Milford Police Department. The caller's name is not provided. The defendants admit that the caller claimed he was being assaulted by his girlfriend.**

GORDON, MUIR AND FOLEY, LLP, Attorneys at Law, Hartford Square North, Ten Columbus Boulevard, Hartford, CT 06106-1976
Telephone (860) 525-5361    Facsimile (860) 525-4849    Juris No. 24029

2.)    Admit. Officer Dunn wrote incident report of response to complaint of Mr. Quint on 7/9/02.

**The defendant Officer Dunn admits that he was the author of the incident report made in connection with the incident on 7/9/02 involving Mr. Quint and Ms. Casey.**

3.)    Admit. Defendants Dunn, Bethke, Lt. Anderson, & Sgt. Darby responded to complaint of assault by Mr. Quint on 7/9/02.

**The defendants admit that they responded to the complaints that came into the Milford Police Department dispatch on 7/9/02 concerning Mr. Quint and Ms. Casey.**

4.)    Admit. Officer Dunn did not report in his incident report of 7/9/02 that Mr. Quint made 911 call and complaint of assault.

**Admitted.**

5.)    Admit. Officer Bethke did not report that Mr. Quint made 911 call and complaint of assault.

**It is admitted that Officer Bethke made no written incident report of the 7/9/02 incident involving Mr. Quint and Ms. Casey.**

6.)    Admit. Lt. Anderson did not report that Mr. Quint made 911 call and complaint of assault.

**It is admitted that Lt. Anderson made no written incident report of the 7/9/02 incident involving Mr. Quint and Ms. Casey.**

7.)     Admit. Sgt. Darby did not report that Mr. Quint made 911 call and complaint of assault.

**It is admitted that Sgt. Darby made no written incident report of the 7/9/02 incident involving Mr. Quint and Ms. Casey.**

8.)     Admit.  Officer Dunn and Bethke refused to take written statement from Mr. Quint on 7/9/02.

**Denied.**

9.)     Admit. Officer Dunn and Bethke refused medical attention to Mr. Quint on 7/9/02.

**Denied.**

10.)    Admit. Sgt. Darby upon review of Officer Dunn's incident report did not have him correct it and report Mr. Quint called 911 and made complaint of assault.

**The defendant Sgt. Darby cannot admit or deny whether he reviewed Officer Dunn's incident report dated July 9, 2002.  He has no present recollection doing so.  However, if Sgt. Darby did review said report, he admits that he did not have Officer Dunn correct the report and report that Mr. Quint called 911 and made the complaint of assault as such information was not known to Sgt. Darby if it is in fact correct.**

11.)    Admit.  Lt. Anderson upon review of Officer Dunn's incident report, did not have him correct it and report Mr. Quint called 911 and made complaint of assault.

**The defendant Lt. Anderson cannot admit or deny whether he reviewed Officer Dunn's incident report dated July 9, 2002.  He has no present recollection doing so.  However, if Lt. Anderson did review said report, he**

admits that he did not have **Officer Dunn** correct the report and report that **Mr. Quint** called 911 and made the complaint of assault as such information was not known to Lt. Anderson if it is in fact correct.

12.)    Admit. Officer Dunaj contacted Mr. Quint on his cell phone # 589-9328 on 7/27/02, Mr. Quint did not make statement to Officer Dunaj at this time or any other time.
**Denied.**

13.)    Admit. Officer Dunaj wrote arrest warrant application dated 8/31/02.
**Admitted.**

14.)    Admit Officer Dunaj wrote incident report on 7/22/02 and supplement to report on 8/16/02
**Admitted.**

15.)    Admit. Officer Dunaj, Vitti, Esposito, & Marschese arrested Mr. Quint on 8/21/02 without a arrest warrant.
**It is admitted that Mr. Quint was arrested by Officer Dunaj without a warrant for an incident that took place on 8/20/02. He was secured in a cell at approximately 0045 hours on 8/21/01.**

16.)    Admit. Officer Moore arrested Mr. Quint on 8/21/02 without a arrest warrant.
**Denied.**

17.)    Admit. Mr. Quint was placed in cell M-4 by officers Moore and Dunaj, without a mattress, sheets or blankets.

**Admitted.**

18.)    Admit. Officer Dunaj did make a false statement about the phone # he contacted Mr. Quint at on 7/27/02.

**Denied.**

19.)    Admit. Officer Dunaj did make a false report about taking statement from Mr. Quint on 7/27/02

**Denied.**

DEFENDANTS:

By:

Michael C. Conroy
Gordon, Muir & Foley, LLP
10 Columbus Boulevard
Hartford, CT 06016
(860) 525-5361
Federal Bar No. ct15656

## **C E R T I F I C A T I O N**

This is to certify that a copy of the foregoing was mailed to the following pro se party of record on June 10, 2005:

Richard R. Quint
Inmate #123433
Garner Correctional Institute
50 Nunnawauk Road
P.O. Box 5500
Newtown, CT  06470


MICHAEL C. CONROY

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS No. 24029

Exibir D

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT
### At Bridgeport

RICHARD R. QUINT                                     Inmate #123433
    Plaintiff                         : CIVIL ACTION NO. 3-02-2053 (AVC)(TPS)

VS.                                                          :

                                           :

A. DUNAJ, ET AL                                          :
    Defendants                                   : MAY 27, 2004

## DEFENDANTS' NOTICE RE: COMPLIANCE WITH COURT ORDER

The defendants through counsel hereby give notice to the court and to the plaintiff that on Monday,

May 24, 2004 the defendants complied with the order of this court (Covello, J.) dated May 12, 2004, by

depositing in the mail to the plaintiff a copy of that portion of the 911 call recorded by the police

department. The envelope was mailed to the last known address on record for the plaintiff at the prison

facility in Cheshire. However, on May 25, 2004 the defendants received the plaintiff's Motion for

Reconsideration and Objection to Order dated May 21, 2004 and noted that the plaintiff was transferred to a

prison facility in Enfield. Prior to the motion the defendants had no notice that the plaintiff was transferred.


                                                 DEFENDANTS:

                  By       *Patty G. Swan*
                             Patty G. Swan
                             Gordon, Muir & Foley, LLP
                             10 Columbus Boulevard
                             Hartford, CT 06106
                             Federal Bar No. ct15656




# Milford Police Department
## Policy

### Chief Thomas E. Flaherty

**SUBJECT:**   Master Recording Machine – Playback Authorization - Security of Tapes — Logs

**EFFECTIVE DATE:**      October 6, 2003

The Milford Police Department, in accordance with established law and practice record all radio transmissions and telephone calls that come into this Department's emergency communications center. Personnel having a need to access these recordings for investigative purposes shall adhere to the following procedure.

## Playback Authorization

- Submit a written request to their Division Commander for their review and authorization
- Upon review and approval this request will be forwarded to the Patrol Division Commander for review and authorization
- Upon authorization the Patrol Div. C.O. will either obtain the tape from the Evidence officer (who will log it out to the C.O.) or authorize the accessing of the requested information from the recorders hard drive
- A copy of the authorized request will be forwarded to the Chief's Office by the Patrol Div. C. O.
- The Patrol C. O. and the Evidence Officer will maintain logs to accurately track the location, use of and requests for master tapes
- After the tape has been played back and transcribed the master tape will be returned to evidence
- Any reproductions or copies of any portion of the master tape will be noted on the authorization form and such form will indicate who is in possession of such copy.
- Only those persons authorized and trained are allowed to access the Nicelog program for the purposes of retrieving recorded data

## Security of Tapes

The Patrol Captain will insure that the authorization forms and tape logs are properly and completely executed. The evidence officer will be responsible for carefully maintaining the security of the tapes as well as accurate logs of requests and the location of the tapes. He will also insure that at a minimum, one (1) year of recorded tapes are always maintained at any one time in his custody.

In the event an emergency arises requiring the immediate playback of a tape during the hours the Patrol Commander is not on duty, the Patrol Commander, the operations Inspector or the Chief of Police will be contacted to authorize the response of a trained operator to retrieve the needed data.

Personnel who have not been trained or provided with access authorization will not attempt to access the playback program to retrieve data from the system. In the event, the Shift Commander deems it an emergency to retrieve data they will complete a memo detailing the circumstances and forward it to the Patrol Commander for his review.

A Division Commander who has a need to access the master recorder retrieval system will forward the authorization form to the Operations Inspector for his review and authorization.

### UNITED STATES DISTRICT COURT
#### for the
### DISTRICT OF CONNECTICUT AT HARTFORD

|  |  |
|---|---|
| RICHARD R. QUINT | Inmate #123433 |
|  | :    CIVIL NO. 3:02CV2053(AVC) |
| V. | : |
| A. DUNAJ, ET AL., | :    SEPTEMBER 16, 2003 |

#### <u>INTERROGATORIES DATED JUNE 20, 2003</u>

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

    1.      From all parties, What is your full name and address?

**ANSWER:**    **Brandon Marschner**
**430 Boston Post Rd**
**Milford, CT 06460**

    2.      From all parties, State all assets you have.

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

    3.      From all parties, State all your job qualifications and resume.

**ANSWER:**    **I am a patrol officer with the Milford Police Department.**

    4.      From the following parties: **Dunn, Bethke, Anderson, and Darby**.  Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

## DEFENDANT'S VERIFICATION

I, **Brandon Marschner**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

Brandon D. Marschner
**BRANDON MARSCHNER**

Subscribed and sworn to before me this _8TH_ day of _SEPT_, 2003.

Kenneth E. Walewski
Notary Public
My Commission Expires:

KENNETH E. WALEWSKI
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2006

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD

RICHARD R. QUINT            :

        V.                    :

A. DUNAJ, ET AL. ,          :

Inmate #123433
CIVIL NO. 3:02CV2053(AVC)

SEPTEMBER 16, 2003

### <u>INTERROGATORIES DATED JUNE 20, 2003</u>

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

1.      From all parties, What is your full name and address?

**ANSWER:**      **Daniel Esposito**
                     **430 Boston Post Rd**
                     **Milford, CT 06460**

2.      From all parties, State all assets you have.

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

3.      From all parties, State all your job qualifications and resume.

**ANSWER:**      **I am a patrol officer for the Milford Police Department.**

4.      From the following parties: **Dunn, Bethke, Anderson, and Darby.** Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361            FACSIMILE (860) 525-4849            JURIS No. 24029

**ANSWER:**      **The defendant does not answer this question, as it is not directed to him.**

     5.      The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it is not a question. To the extent that the same can be treated as a request to produce, the transcription is enclosed. The tape no longer exists.**

     6.      From the following parties: **Dunn, Bethke, Anderson, Darby, And Hurley**. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:**      **The defendant does not answer this question, as it is not directed to him.**

     7.      From the following parties: **Dunn, Bethke, Anderson, Darby**. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:**      **The defendant does not answer this question, as it is not directed to him.**

     8.      From the following parties: **Dunn, Bethke, Anderson, And Darby**. Was Mr. Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:**      **The defendant does not answer this question, as it is not directed to him.**

     9.      What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:**      **Normal procedure is if anyone has an injury or complains of injury then they are asked if they want medical attention. If they request it then it is afforded to them**

     10.      From the following parties: **Dunn**. In your report on 7/9/02 why doesn't it state who made complaint that brought you to the area of 48 Merwin Ave on 7/9/02.

**ANSWER:**      **The defendant does not answer this question, as it is not directed to him.**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976

TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS NO. 24029

## SIGNATURE PAGE

I, <u>Daniel Esposito,</u> hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____
DANIEL ESPOSITO

SUBSCRIBED AND SWORN TO before me this _24TH_ day of _SEPT_ 2003

_____
(NOTARY)

KENNETH E. WALEWSKI
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2006

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD


RICHARD R. QUINT

V.

A. DUNAJ, ET AL. ,

Inmate #123433
:     CIVIL NO. 3:02CV2053(AVC)

:

:     SEPTEMBER 16, 2003


<u>INTERROGATORIES DATED JUNE 20, 2003</u>

     I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33


     1.      From all parties, What is your full name and address?

**ANSWER:**     **Sean Moore**
**430 Boston Post Rd**
**Milford, CT 06460**


     2.      From all parties, State all assets you have.

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**


     3.      From all parties, State all your job qualifications and resume.

**ANSWER:**     **I am a patrol officer for the Milford Police Department.**


     4.      From the following parties: Dunn, Bethke, Anderson, and Darby. Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

**ANSWER:**      The defendant does not answer this question, as it is not directed to him.

5.      The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it is not a question. To the extent that the same can be treated as a request to produce, the transcription is enclosed.  The tape no longer exists.**

6.      From the following parties: Dunn Bethke, Anderson, Darby, And Hurley. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:**      The defendant does not answer this question, as it is not directed to him.

7.      From the following parties: Dunn, Bethke, Anderson, Darby. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:**      The defendant does not answer this question, as it is not directed to him.

8.      From the following parties: Dunn, Bethke, Anderson, And Darby. Was Mr. Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:**      The defendant does not answer this question, as it is not directed to him.

9.      What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:**      Normal procedure is if anyone has an injury or complains of injury then they are asked if they want medical attention.  If they request it then it is afforded to them.

10.      From the following parties: Dunn. In your report on 7/9/02 why doesn't it state who made complaint that brought you to the area of 48 Merwin Ave on 7/9/02.

**ANSWER:**      The defendant does not answer this question, as it is not directed to him.

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976

TELEPHONE (860) 525-5361            FACSIMILE (860) 525-4849            JURIS NO. 24029

## DEFENDANT'S VERIFICATION

I, **Sean Moore**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____
**SEAN MOORE**

Subscribed and sworn to before me this ___3ᴿᴰ___ day of ___SEPT.___, 2003.

_____
Notary Public
My Commission Expires: *1 - 31 - 06*

JOSEPH J PIETRAFESA
NOTARY PUBLIC
MY COMMISSION EXPIRES
JANUARY 31, 2006

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD

RICHARD R. QUINT

V.

A. DUNAJ, ET AL. ,

:
:
:

Inmate #123433
CIVIL NO. 3:02CV2053(AVC)

SEPTEMBER 16, 2003

<u>INTERROGATORIES DATED JUNE 20, 2003</u>

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

1.    From all parties, What is your full name and address?

**ANSWER:**    **Officer Christopher Dunn**
**430 Boston Post Rd**
**Milford, CT 06460**

2.    From all parties, State all assets you have.

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

3.    From all parties, State all your job qualifications and resume.

**ANSWER:**    **Police Officer for the City of Milford**

4.    From the following parties: Dunn, Bethke, Anderson, and Darby.  Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

**ANSWER:**     **According to the computer entry made by communications, personnel listed on fact sheet of report anonymous complaint of couple arguing in area of Sanpiper Cresent/Merwin Ave.**

     5.     The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION:**     **The foregoing interrogatory is objected to on the grounds that it is not a question. To the extent that the same can be treated as a request to produce, the transcription is enclosed. The tape no longer exists.**

     6.     From the following parties: Dunn, Bethke, Anderson, Darby, And Hurley. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:**     **The charge of Breach of Peace fit the incident.**

     7.     From the following parties: Dunn, Bethke, Anderson, Darby. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:**     **During initial interviews both individuals were asked if medical treatment was needed and both declined medical treatment. I was not aware of medical treatment being requested after this.**

     8.     From the following parties: Dunn, Bethke, Anderson, And Darby. Was Mr. Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:**     **No, because according to the report no medical attention was requested.**

     9.     What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:**     **We ask if they want treatment, if so, it is offered. If declined, it is indicated in the report.**

## DEFENDANT'S VERIFICATION

I, **Christopher Dunn**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____
**CHRISTOPHER DUNN**

Subscribed and sworn to before me this _30TH_ day of _AUGUST_, 2003.

_____
Notary Public
My Commission Expires:

**KENNETH E. WALEWSKI**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2006

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD


RICHARD R. QUINT

V.

A. DUNAJ, ET AL. ,

:

:

:

Inmate #123433
CIVIL NO. 3:02CV2053(AVC)


SEPTEMBER 16, 2003

<u>INTERROGATORIES DATED JUNE 20, 2003</u>

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33


1.    From all parties, What is your full name and address?

**ANSWER:    Sean Darby
430 Boston Post Rd
Milford, CT 06460**


2.    From all parties, State all assets you have.

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**


3.    From all parties, State all your job qualifications and resume.

**ANSWER:    Sergeant with Milford Police**


4.    From the following parties: Dunn, Bethke, Anderson, and Darby.  Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

**ANSWER:    I believe it came from a citizen who wished not to give their name**

GORDON, MUIR AND FOLEY, LLP, Attorneys at Law, Hartford Square North, Ten Columbus Boulevard, Hartford, CT 06106-1976
Telephone (860) 525-5361                    Facsimile (860) 525-4849                    Juris No. 24029

5.     The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION:    The foregoing interrogatory is objected to on the grounds that it is not a question. To the extent that the same can be treated as a request to produce, the transcription is enclosed. The tape no longer exists.**

6.     From the following parties: Dunn Bethke, Anderson, Darby, And Hurley. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:    Ms. Casey was charged with Breach of Peace. It is in the officer's discretion to determine what charges apply. Officer Dunn was the arresting officer.**

7.     From the following parties: Dunn, Bethke, Anderson, Darby. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:    I do not recall. See Interrogatory Response No. 8**

8.     From the following parties: Dunn, Bethke, Anderson, And Darby. Was Mr. Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:    I don't believe so. To the best of my recollection, I believe that Officer Dunn asked Mr. Quint if he wished to receive medical attention and Mr. Quint refused**

9.     What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:    Normal procedure is if anyone has an injury or complains of injury then they are asked if they want medical attention. If they request it then it is afforded to them**

10.     From the following parties: Dunn. In your report on 7/9/02 why doesn't it state who made complaint that brought you to the area of 48 Merwin Ave on 7/9/02.

**ANSWER:    The defendant does not answer this question, as it is not directed to him.**

## DEFENDANT'S VERIFICATION

I, **Sean Darby**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____
SEAN DARBY

Subscribed and sworn to before me this __2__ day of __sept__, 2003.

_____
Notary Public
My Commission Expires:

GERALD V. BUTLER, JR.
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAR. 31, 2007

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD


RICHARD R. QUINT

V.

A. DUNAJ, ET AL. ,

:    Inmate #123433
:    CIVIL NO. 3:02CV2053(AVC)
:
:
:    SEPTEMBER 16, 2003

<u>INTERROGATORIES DATED JUNE 20, 2003</u>

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33


1.    From all parties, What is your full name and address?

**ANSWER:    Edward Bethke
430 Boston Post Rd
Milford, CT 06460**

2.    From all parties, State all assets you have.

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

3.    From all parties, State all your job qualifications and resume.

**ANSWER:    I am a 10 year veteran police officer with the Milford Police Department. I am a patrol officer.**

4.    From the following parties: Dunn, Bethke, Anderson, and Darby. Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

**ANSWER:**      **It was an anonymous complaint**

5.      The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION:    The foregoing interrogatory is objected to on the grounds that it is not a question.  To the extent that the same can be treated as a request to produce, the transcription is enclosed.  The tape no longer exists.**

6.      From the following parties: Dunn Bethke, Anderson, Darby, And Hurley. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:      Ms. Casey was charged with Breach of Peace.  It is in the officer's discretion to determine what charges apply.  Officer Dunn was the arresting officer.  I believe the elements of Assault  3rd Degree did not apply in this case.**

7.      From the following parties: Dunn, Bethke, Anderson, Darby. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:      Mr. Quint had swelling in his right eye area and a small amount of bruising on his arms.  Mr. Quint denied medical attention when asked if he needed same by Officer Dunn.**

8.      From the following parties: Dunn, Bethke, Anderson, And Darby. Was Mr. Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:      No, because he declined medical attention when Officer Dunn asked him if he needed treatment**

9.      What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:      If medical attention is requested, fire rescue is called to respond.  If medical attention is refused, the fire rescue is not called**

## DEFENDANT'S VERIFICATION

    I, **Edward Bethke**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

*Edward Bethke*

**EDWARD BETHKE**

Subscribed and sworn to before me this _15th_ day of _August_ 2003.

Notary Public

My Commission Expires: _1 - 31 - 06_

JOSEPH J PIETRAFESA
NOTARY PUBLIC
MY COMMISSION EXPIRES
JANUARY 31, 2006

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD

| | | |
|---|---|---|
| | | Inmate #123433 |
| RICHARD R. QUINT | : | CIVIL NO. 3:02CV2053(AVC) |
| V. | : | |
| A. DUNAJ, ET AL. , | : | SEPTEMBER 16, 2003 |

### INTERROGATORIES DATED JUNE 20, 2003

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

1.     From all parties, What is your full name and address?

**ANSWER:**     **William J. Anderson, Jr.**
**430 Boston Post Rd**
**Milford, CT 06460**

2.     From all parties, State all assets you have.

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

3.     From all parties, State all your job qualifications and resume.

**ANSWER:**     **27 plus years as a Milford Police Officer, current rank of Lieutenant**

4.     From the following parties: Dunn, Bethke, Anderson, and Darby.  Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

**ANSWER:**     **Anonymous**

　　　　5.　　　　The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION:    The foregoing interrogatory is objected to on the grounds that it is not a question. To the extent that the same can be treated as a request to produce, the transcription is enclosed. The tape no longer exists.**

　　　　6.　　　　From the following parties: Dunn, Bethke, Anderson, Darby, And Hurley. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:     Ms. Casey was charged with Breach of Peace. It is in the officer's discretion to determine what charges apply. Officer Dunn was the arresting officer.**

　　　　7.　　　　From the following parties: Dunn, Bethke, Anderson, Darby. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:     I do not recall. The report of 7/9/02 is enclosed. The report indicates that while on the scene Officer Dunn noted that Mr. Quint had swelling in his right eye area and small amounts of bruising on his arms and body. Mr. Quint declined medical treatment and to give a written statement. While at the station, there is no indication medical attention was requested of Mr. Quint.**

　　　　8.　　　　From the following parties: Dunn, Bethke, Anderson, And Darby. Was Mr Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:     See response to Interrogatory No. 7.**

　　　　9.　　　　What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:     If treatment is needed and/or requested, medical treatment is sought.**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

## DEFENDANT'S VERIFICATION

I, **William Anderson**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

WILLIAM ANDERSON

Subscribed and sworn to before me this _14_ day of _August_ 2003.

Notary Public
My Commission Expires:

**STEVEN FOURNIER**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES APR. 30, 2005

## DEFENDANT'S VERIFICATION

I, **Antonio Vitti**, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

ANTONIO VITTI

Subscribed and sworn to before me this 5TH day of SEPT, 2003.

Notary Public
My Commission Expires:

KENNETH E. WALEWSKI
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2006

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD

RICHARD R. QUINT

V.

A. DUNAJ, ET AL. ,

:

:

:

Inmate #123433
CIVIL NO. 3:02CV2053(AVC)

SEPTEMBER 16, 2003

<u>INTERROGATORIES DATED JUNE 20, 2003</u>

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

1.     From all parties, What is your full name and address?

**ANSWER:**     **Antonio Vitti**
**430 Boston Post Rd**
**Milford, CT 06460**

2.     From all parties, State all assets you have.

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

3.     From all parties, State all your job qualifications and resume.

**ANSWER:**     **I am a patrol officer with the Milford Police Department.  I am also the Department's**
**Dare officer.**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

4.    From the following parties: **Dunn, Bethke, Anderson, and Darby**. Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

5.    The tape and transcript of 911 call at 2:10 Am on 7/9/02 to Milford police station from Mr. Quint.

**OBJECTION: The foregoing interrogatory is objected to on the grounds that it is not a question. To the extent that the same can be treated as a request to produce, the transcription is enclosed. The tape no longer exists.**

6.    From the following parties: **Dunn, Bethke, Anderson, Darby, And Hurley**. Why Wasn't Miss Casey charged with assault 3rd?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

7.    From the following parties: **Dunn, Bethke, Anderson, Darby**. Did Mr. Quint Have injuries that needed to be treated when detained at police station?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

8.    From the following parties: **Dunn, Bethke, Anderson, And Darby**. Was Mr. Quint provided with medical attention at police station on 7/9/02? If not, why not?

**ANSWER:**    **The defendant does not answer this question, as it is not directed to him.**

9.    What are the policies and procedures of Milford Police Dept. on people brought in with injuries?

**ANSWER:**    **For anyone that suffers/complains of injury and wants medical attention, an officer will contact the Communications Room personnel. In most cases the fire department and AMR are notified. The individual is then treated by the Fire Department personnel and transported to the hospital by AMR for further treatment.**

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT AT HARTFORD

|  |  |  |
|---|---|---|
| RICHARD R. QUINT | : | Inmate #123433<br>CIVIL NO. 3:02CV2053(AVC) |
| V. | : |  |
| A. DUNAJ, ET AL. , | : | SEPTEMBER 16, 2003 |

### INTERROGATORIES DATED JUNE 20, 2003

I Mr. Richard R. Quint, do hereby request. In Propria Personam interrogatories. In accordance with Fed. Rule No. 33

1.    From all parties, What is your full name and address?

**ANSWER:**    **Andrew Dunaj**
**430 Boston Post Rd**
**Milford, CT 06460**

2.    From all parties, State all assets you have.

**OBJECTION:  The foregoing interrogatory is objected to on the grounds that it seeks information beyond the scope of discovery, which is not material to the subject matter of the instant action, concerns the defendant's personal financial status violating his right to privacy, which would not be of assistance in the prosecution of this action, and which is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.**

3.    From all parties, State all your job qualifications and resume.

**ANSWER:**    **I am a patrol officer for the Milford Police Department.**

4.    From the following parties: Dunn, Bethke, Anderson, and Darby.  Who made the complaint that brought you to the area of 48 Merwin Ave on 7/9/02 at 2:10 AM?

## SIGNATURE PAGE

I, <u>Andrew Dunaj</u>, hereby certify that I have reviewed the above Interrogatories and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____
ANDREW DUNAJ

SUBSCRIBED AND SWORN TO before me this ___25___ day of __Sept.__ __2003__

_____
(NOTARY)

My Commission Expires
February 28, 2005

Exibit E



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

March 21, 2005

RE: Charge No. 16A-2004-00321

Richard R. Quirt, #123433
Norther C. I. Med 2
287 Bilton Road
Somers, CT.   06071

Dear Mr. Quirt:

This is in response to your correspondence of 3/14/05 regarding the above referenced charge requesting information to file suit.

Enclosed please find "Facts About Filing an Employment Discrimination Suit in Federal Court in the State of Connecticut."

I hope this information is helpful.

Sincerely,

Anne Giantomio
Supervisor

# FACTS ABOUT FILING
## AN EMPLOYMENT DISCRIMINATION SUIT
## IN FEDERAL COURT IN STATE OF CONNECTICUT

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. A law suit can be filed at the following U. S. District Court locations in Connecticut:

- The **United States District Court for the District of Connecticut** is located at The Abraham Ribicoff Federal Building, 450 Main Street, Hartford, Connecticut 06103, or by contacting the Clerk of the Court Office at (860) 240-3200

- The **United States District Court for the District of Connecticut** is located at 141 Church Street, New Haven, Connecticut 06510, or by contacting the Clerk of the Court Office at (203) 773-2140

- The **United States District Court for the District of Connecticut** is located at The Brien McMahon Federal Building, 915 LaFayette Boulevard, Bridgeport, Connecticut 06604, or by contacting the Clerk of the Court Office at (203) 579-5861

- The **United States District Court for the District of Connecticut** is located at 14 Cottage Place, Waterbury, Connecticut 06702, or by contacting the New Haven Clerk of the Court location at (203) 773-2140

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit **must** be filed in U.S. District Court within **90 days** of the date you receive the enclosed final action. Once this 90-day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)

Information Sheet (page 1 of 2)

Exhibit F

## LIEUTENANT

1. A Lieutenant commands the activities of subordinates in a prescribed manner; is responsible for the prompt, effective, efficient and unprejudiced implementation of all duties and orders.

2. A Lieutenant must be aware of all conditions in the City requiring Police attention, such as, traffic, criminal and patrol activities, and notifies supervisors immediately of major crimes or instances involving the Milford Police Department.

3. A Lieutenant is responsible for the assignments of subordinate personnel to make most effective use of ability and initiative of personnel; supervises continued training and development of personnel in the Department; meets with subordinates for consultation, instruction and review of work performance, matters involving moral, general health and physical fitness; new and advanced modern Police practices, methods, techniques and scientific aids, policy and procedure, and the conducting of investigations and raids.

4. A Lieutenant acts as Division Commander and/or Headquarters Executive Officer, when assigned or in the absence of a Superior Officer.

5. A Lieutenant prepares and delivers lectures on Police topics in the training program, the auxiliary Police training programs and to other interested groups or organizations; cooperates with all other law enforcement agencies and maintains good public relations with the news media, public officials and the general public; represents the Department in public appearances.

Exibit G

# SERGEANT

1. A Sergeant assigns and supervises a work group of Patrolmen in designated areas or designated assignments on a rotating, around the clock system; generally a 40-hour work week.

2. A Sergeant is responsible for the efficient operation of Police Headquarters in the absence of a Superior Officer.

3. A Sergeant investigates major crimes and makes special investigations of violations of criminal laws; identifies and apprehends criminals; collects and prepares evidence for criminal and civil Court use; visits and minutely examines scenes of crimes; follows up investigative leads and clues; supervises and correlates evidence and prepares requests for scientific examinations; interrogates victims, suspects, witnesses; prisoners and complainants; ability to supervise and prepare comprehensive and legally acceptable confessions, statements and dying declarations.

4. A Sergeant works closely with Prosecuting Attorney, Medical Examiner, State's Attorney, Coroner, other Police Departments and other agencies.

5. A Sergeant supervises preparation of extradition proceedings, and participates in crime prevention programs.

6. A Sergeant investigates civil cases for City Attorney, in which the City is a party in interest, and prepares detailed and comprehensive case files.

7. A Sergeant works with and maintains Liaison with other Departments' investigators; State, Federal agencies and Courts, and does related work as required.

8. A Sergeant may be in charge of Division in absence of a Superior Officer.

Exibit H.

1. Every patrolman, in accepting the appointment, assumes the functions of public safety, the preservation of the public peace, the protection of life and property ,the prevention of crime, and the proper enforcement of all laws and ordinances of which the department takes cognizance, shall constantly direct his best efforts to accomplish these ends, intelligently and efficiently, and shall hold himself in readiness at all times to answer the calls and obey the orders of his superiors. Every patrolman shall be called to strict accountability for the good order of the beat or post to which he may be assigned and shall have such hours of duty as may be prescribed by the Superintendent of Police.

2. A patrolman, unless otherwise directed, shall report at Headquarters before going on duty, properly uniformed and equipped, and shall give careful attention to dispatches, orders, and instructions read or issued by his superior officers. If absent without leave, he shall be reported to the Superintendent of Police.

3. A patrolman, when assigned to a beat, shall faithfully, diligently, constantly, and continually patrol every part to the limits thereof until the expiration of his tour of duty. He must not sit, lounge, or loaf. When required to interrupt his regular patrol to give attention to any complaint, call for assistance, arrest of an offender, or other police emergency, he shall attend to such duty with business-like dispatch and without unnecessary loss of time resume the patrol of his beat in the regular manner.

4. It shall be the duty of a patrolman to report to the desk officer or other commanding officer all crimes, suicides, attempted suicides, fires, accidents, breaches of peace, complaints of citizens and all other important happenings coming to his attention upon his beat or elsewhere whether on or off duty.

5. A patrolman shall give his assistance for the protection of persons and property and the enforcement of law even off his beat in any case requiring immediate attention, but he shall return to his own beat as soon as possible.

6. A patrolman shall carefully inspect every part of his beat as often as possible and by his vigilance and activity render it difficult for anyone to commit crime therein. He must, to the utmost of his power, prevent the commission of assaults, breaches of the peace, and all other offenses about to be committed.

7. A patrolman shall at night and during the time that business houses are closed exercise the greatest vigilance, frequently examining and trying accessible doors and windows of business and public places on his beat; investigating all suspicious circumstances which present themselves. He shall from time to time examine in like manner all dwellings on the closed house list on his beat. If any windows or doors are found broken, open or unsecured, the fact shall be promptly reported to the desk officer, and the owner notified when possible.

8. A patrolman shall strictly note the conduct of all suspicious persons and all persons of known bad character, and make such observations as will enable recognition of them at any time. He shall particularly note their movements, habits, associations, and the premises they enter or frequent. He shall learn their names, residences, occupations, and keep a record of the same and report to his commanding officer all information he may obtain.

9. A patrolman shall furnish such information or render such aid to all persons when requested by any person as is consistent with his duties.

10. A patrolman shall note and investigate, especially during the night time, all vehicles, the drivers or occupants of which in any manner may excite suspicion. He shall take such immediate action as he deems

necessary, and report the facts to the desk officer. He shall pay particular attention to motor vehicles of all kinds, observing their numbers, and constantly watch for such as have been stolen, or which may have been used in the commission of crime, or are not properly licensed or legally equipped.

11. A patrolman shall inform himself as to houses or buildings on his beat in which violations of the law are believed to exist and shall take necessary police action and if uncertain as to how to proceed, shall report the facts to a superior officer.

12. A patrolman shall familiarize himself with the locations of fire and police signal boxes and all telephones on his beat available for his use. A patrolman on foot patrol, during his hours of duty shall report to the police telephone operator from patrol signal boxes every hour, or at such times and places as may be prescribed and designated by his division commander. This, however, should not prevent a patrolman from remaining at any particular place for any length of time if his presence is required on legitimate and necessary police business.

13. A patrolman, shall, when any disturbance occurs within his beat or in the immediate vicinity thereof, instantly proceed to the spot and use his best efforts to restore peace and order. If any person shall have committed a crime, or shall by loud outcrys or otherwise persist in disturbing the peace, the person offending shall be taken into custody and conveyed to Police Headquarters.

14. A patrolman shall not leave his beat, except for some police or other proper necessity. If required to absent himself from his beat, he shall, as soon as circumstances permit, communicate with his Commanding Officer the fact of leaving his beat and the reason therefore. Upon his return he shall exercise extra-ordinary vigilance in determining whether or not any circumstances have occurred requiring police attention.

15. A patrolman on a beat shall see that the sidewalks and street corners are not obstructed by persons loitering thereon. Whenever three or more persons obstruct any street, sidewalk, or public place in violation of State Statute, it shall be the duty of the patrolman on complaint, or at the direction of his commanding officer to courteously request them to move on; and, if such persons unreasonably persist in remaining so as to discommode other pedestrians, the patrolman shall take them to Police Headquarters.

16. A patrolman shall not have in his possession, without the knowledge and consent of his commanding officer, a key to any premises upon or near his beat.

17. A patrolman, when on patrol duty, shall not carry on lengthy conversations with patrolmen or with persons unless it is for the purpose of communicating or receiving information pertaining to police duties.

18. A patrolman, while on patrol duty, shall not enter any house, building, or place of business or amusement, except when necessity requires or in the strict discharge of his duty; a patrolman, however, shall be permitted to suspend patrol for the purpose of eating, but only for such time as is reasonably and actually necessary therefor, which shall be regulated and arranged by his commanding officer. Except under unusual conditions, lunch periods shall not be taken within 1½ hours of end of tour of duty. No more than two officers in uniform shall be in the same diner at the same time, except on official business.

19. A patrolman shall make himself thoroughly familiar with the City, including the routes of bus lines, location of streets, public buildings and places, hospitals courts, transportation offices and depots, prominent office and other buildings, important industrial plants, highways, and the location of City, County, State, and Federal officials and such other knowledge pertaining to the Government of the City and County and institutions thereof as will enable him to give intelligent and helpful information and assistance when requested.

20. A patrolman shall note and report immediately to his commanding officer all incidents and conditions coming under observation on his beat, such as dangerous buildings, street or traffic lights out, traffic signs and other devices removed or damaged, public property which may be found defective or broken — (drain, pumps, fire plugs, sewers, water pipes) broken and dangerous trees, dangerous holes or obstructions in sidewalks, roadways, and parks; and shall immediately take such measure as will protect the public interests until the conditions have been properly corrected.

21. A patrolman may seek and shall receive from his superior officers any advice, counsel and guidance necessary to the proper performance of his duty. In the proper performance of his duty each patrolman shall receive the fullest cooperation and backing of his superior officers and the department as a whole.

22. Patrolmen shall be responsible for reports and/or investigations on their assigned "beats," unless otherwise ordered by a superior officer.

23. Patrolmen assigned to foot patrol are to notify hearquarters each time they leave the immediate vicinity of their call box, and when they return. (24 hours per day).

24. All duties and/or assignments are subject to temporary change, at the discretion of the desk sergeant, (or C.O.).

Exibit I

*** MILFORD POLICE DEPARTMENT ***                    Page (1)
COMMUNICATIONS ROOM - PROCEDURAL GUIDE
OCTOBER 3, 1996

### CHAIN OF COMMAND - COMMUNICATIONS ROOM

The Headquarters Sergeant is in direct control of the Communications Room. All matters pertaining to Communications will flow through him, up through the Chain of Command of the Milford Police Department.

### DRESS CODE

The dress code in the Communications Room will consist of the following: For Police Officers working in the Communications Room, uniform of the day will be required; they are also required to wear their on-duty sidearm, black holster, and will be required to carry their pepper mace.

Civilian dispatcher personnel working in the Communications Room are expected to present a clean, professional appearance, appropriate for an office environment. The following apparel is considered unsatisfactory for duty, and is prohibited:

1. Jeans (any color)          5.  Shorts

2. Tank Tops                  6.  Strapless dress (unless jacket is
                                  worn over it)

3. Tube Tops                  7.  Sandals (safety reasons)

4. Cut off shorts            8.  Spiked heels

Any apparel that has any suggestive wording or graphics is inappropriate.

### COMMUNICATIONS ROOM SHIFT HOURS

The number of Communications Room personnel assigned to the Communications Room will be two, and those personnel are to work the hours of 8-4, 4-12 and 12-8 respectively. Officers who are reassigned to the Communications Room from another shift, i.e., 11-7, shall change their hours to M-8, etc. The two personnel working Communications Room will comprise a combination of one Patrol Officer and one civilian dispatcher. In the event a civilian dispatcher is not assigned, two Patrol Officers will be assigned to Communications Room. The only exception to this is if the Shift Commander deems it appropriate to assign a steno to the Communications Room on a limited basis.

* NOTE:  In the event of the hiring of additional civilian dispatchers by
         the City, it will not be required to have a Patrol Officer in the
         Communications Room when two civilian dispatchers are present.

## RESPONSIBILITY OF COMMUNICATIONS ROOM PERSONNEL

Communications Room are to become proficient in the use of equipment in the Communications Room, and to receive complaints, compile information and dispatched complaints to Officers in the field. It is expected of persons working within the Communications Room that calls from complainants and dispatches to Officers will be handled in a dignified, professional manner. Communications Room personnel are to make every effort to obtain a complainant's name and address; and personnel are to remain courteous and professional with the public. Communications Room are expected to refrain from any argumentative or abusive behavior while speaking with the person calling, under all circumstances.

Communications Room personnel are expected to learn and use the phonetic alphabet during radio transmissions.

Communications Room personnel are to stagger their lunch breaks, as that both are not absent from the Communications Room at the same time.

Communications Room personnel, upon receipt of a complaint, are to evaluate the call, and obtain all information which will help the assigned unit(s) respond in an efficient and safe manner. This is true, whether the complaint is of an abandoned vehicle or a larceny in progress. Communications personnel's questions should be relative to the incident, for the complaint they are taking, i.e., How was the suspect dressed? Was a motor vehicle seen or heard leaving the scene? Direction of travel?

Communications Room personnel should keep in mind that the primary concern of this Department is to respond to complainants and complaints as quickly as possibly, therefore, complaints are to be dispatched as soon as possible, and not necessarily to be held for extended time periods for the Officer working in that particular area.

Communications Room personnel are to make every effort to remain in telephone contact with persons in incidents where physical violence, or crimes in progress (or the possibility of same) exist; the safety of the caller is an important factor and the caller should be retained on the telephone as long as safely possible. However, when immediate danger exists, such as someone breaking in a door, threatening with a weapon, etc., Communications personnel must take an active role in assisting the caller to safety. At the very least, keep the phone line open. Communications Room personnel in these circumstances are to make a continuing effort to gather information and update responding units to a changing crime scene.

Communications Room personnel are to notify the Headquarters Sergeant as soon as possible in all cases concerning unusual, serious or emergency calls.

Upon receipt of a complaint, Communications Room personnel are to make the computer entry for the call as soon as possible, without unnecessary delay. Communications Room personnel are to make complaint entries into the computer for any calls received, either by a complainant or by Patrol

*** MILFORD POLICE DEPARTMENT ***
COMMUNICATIONS ROOM - PROCEDURAL GUIDE
OCTOBER 3, 1996

Page (3)

ficers in the field, in which an Officer devotes time or investigation his
shift. Communications Room personnel are also to make entries on any
complaint that is not dispatched, for which they themselves have taken
responsibility. If a Communications Room personnel accepts that
responsibility, he/she is to notify the Headquarters Sergeant. When field
Officers, for example, call in a complaint, i.e. suspicious motor vehicle,
suspicious person, etc., computer entries are to be made. Communications
Room personnel are to refrain from asking Patrol Officers if they wish or
need a computer entry.

Communications Room personnel, when dispatching, are to obtain locations
from patrol units that are being called. If an Officer fails to give his
location, it is Communications Room personnel's responsibility to obtain
his information.

Communications Room personnel are responsible to record all license plates
and locations of motor vehicle stops, regardless of the circumstances. Each
Communications person is to keep a written record of these stops. This
record is to be kept in the Communications Room in a log supplied for each
shift. Each person working in the Communications Room will have a log
sheet. Communications Room personnel are to place their names, date, shift
and time on each log sheet used by them, and the completed log sheet shall
be turned in to the Headquarters Sergeant at the end of the shift.

Communications Room personnel are required to broadcast the time at least
every fifteen minutes during the shift. It is understandable that during
emergency situations, it may not always be feasible to make these broadcasts
of time, however, as soon as the emergency is over, Communications Room
personnel are to broadcast the time, and continue from there.

Communications Room personnel are to make status checks on patrol Officers,
during the course of a priority call, or under circumstances such as an
Officer not communicating with Headquarters for an extended period of time.

Communications Room personnel are not to accept anything other than a verbal
acknowledgement of transmissions that they make from Headquarters, i.e. a
"click" is NOT a verbal acknowledgement.

Communications Room personnel are to complete a roll call on all broadcasts
in which the subject involves an armed and/or dangerous person, and may be a
particular danger to Police personnel, i.e., hi-jacked vehicle/armed robbery
suspect, armed suicidal person, etc.

Communications Room personnel are responsible to advise patrol units to
maintain radio silence in incidents that would constitute a danger to
Officers, or interfere in their duties on any given call, ie.e., pursuits,
burglary in progress, etc.

Communications Room personnel, when transmitting any general Police
information that is lengthy, are to allow a break in the transmission, to

allow any Officers trying to reach Headquarters to transmit; allow a pause prior to any repeat of a Headquarters transmission.

Communications Room personnel are expected to consider radio transmissions from road Officers a priority, until it is established what the calling unit has. Consideration should be made by road Officers also, if they are aware that Communications Room personnel are handling an emergency call.

Communications Room personnel are to accept no communication either by telephone or in person, from either private citizen or patrol Officer which in its content is critical of their work performance. Communications Room personnel upon receipt of such a communication are to refer that communication immediately to the Headquarters Sergeant.

Communications Room personnel are to keep control of a situation and Officers assigned to calls, and are not to allow changes in dispatched units, unless justified. Example: Cover unit sent on a call observes a motor vehicle violation. Cover Units are not be allowed to deviate from a call which is considered a priority, unless Communications Room personnel determines the stop to be a priority over the initial cover. Headquarters will have the prerogative at that time to change the status of the unit, and reassign another unit. Regardless of the decision, the Headquarters Sergeant is to be notified of the change.


## HEADQUARTERS SERGEANT/COMM ROOM RESPONSIBILITIES

There are to be no unauthorized visitors in the Communications Room.

Visits to the Communications Room, for the purpose of a tour, are to be made in the presence of the Headquarters Sergeant, and are to be brief in nature. These visits or tours are to be conducted only with the permission of the Chief of Police or his designate.

Headquarters Sergeant is to review on a daily basis, all forms and computer entries that are generated from the Communications Room on the shift worked.

Headquarters Sergeant is also required to check all Communications Room paperwork from the previous shift to be sure it has been completed. If it is incomplete, it should be completed at this time, and a notification made to the previous shift supervisor.

Headquarters Sergeant is also to monitor all Communications Room transmissions and to supervise that the above policies, as they relate to the Communications Room are adhered to.


                              Captain C. Edson
                              PATROL DIVISION COMMANDER