UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD R. QUINT | : | |
| | : | PRISONER |
| v. | : | Case No. 3:02CV2053(AVC)(TPS) |
| | : | |
| A. DUNAJ, et al.[1] | : | |

RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Richard R. Quint ("Quint") filed this civil rights action pro se pursuant to 28 U.S.C. § 1915.  He alleges that defendants Dunaj, Dunn, Anderson, Darby, Bethke, Moore, Vitti, Esposito and Marschner (hereinafter "defendants"), violated his constitutional rights when they responded to a call in July 2002, and when they arrested him in May 2002 and August 2002.

_____

[1] The named defendants in the original complaint were Andrew Dunaj, Christopher Dunn, William J. Anderson, Sean Darby, Edward Bethke, Sean Moore, Antonio Vitti, Daniel Esposito, Brandon Marschner, Hurley, Jane Doe and Lisa Richards.  On July 24, 2003 and August 18, 2003, the court granted motions to dismiss filed by defendants Hurley and Richards, respectively.  (See Docs. #35 & #48.) Also on August 18, 2003, the court granted Quint's motion to withdraw all claims for violation of his Fifth and Eighth Amendment rights.  (See Doc. #49.)  Quint filed a third amended complaint on March 3, 2004, eliminating the claims against defendants Hurley, Richards and Doe.  On May 20, 2005, the court granted defendants' motion to dismiss all claims filed pursuant to 42 U.S.C. §§ 1985, 1986, all claims for violation of Quint's right to be free from double jeopardy and all claims against them in their official capacities.  (See Doc. #138.)

Defendants have filed a motion for summary judgment.  For the
reasons that follow, defendants' motion is granted.

I.   Standard of Review

    In a motion for summary judgment, the burden is on the
moving party to establish that there are no genuine issues of
material fact in dispute and that it is entitled to judgment as a
matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO
Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court
must grant summary judgment "'if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to any
material fact....'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d
Cir. 1993) (citation omitted).  A dispute regarding a material
fact is genuine "'if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party.'"  Aldrich v.
Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting
Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).

    When a motion for summary judgment is supported by
documentary evidence and sworn affidavits, the nonmoving party
must present "significant probative evidence to create a genuine
issue of material fact."  Soto v. Meachum, Civ. No. B-90-270
(WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  The court

2

"resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). A party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II. Facts[2]

On May 7, 2002, Milford Police Officers investigated a complaint regarding a domestic dispute between Quint and Francine Casey ("Casey") at 48 Merwin Avenue, Milford CT. Quint was not arrested on that date as a result of the domestic incident, but was arrested by Milford Police on an active warrant from the

---

[2]The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #150-1] along with the exhibits attached to their memorandum [doc. #150-2] as well as Quint's Local Rule 56(a)2 Statement [docs. #155-2 & #155-3] with attached exhibits and affidavit [doc. #155-1].

Stratford Police.  After being transported to the Stratford Police Department, Quint was treated by Stratford EMS for cuts and scrapes.

On July 9, 2002, an anonymous caller reported a domestic dispute at Merwin Avenue.  In response to the anonymous call, police were dispatched to the scene.  Six minutes after the anonymous call, Quint placed a 911 call complaining that he was being assaulted by Casey.  The police arrived at the scene while Quint was speaking to the 911 operator.  Quint terminated the call when the police arrived.

Defendant Dunn completed a police report regarding the July 9, 2002 incident.  He listed the complainant as anonymous and identified both Quint and Casey as victims.  Both Quint and Casey were arrested on identical charges of breach of peace.

On July 9, 2002, Casey obtained a Family Violence Protective Order which, inter alia, prevented Quint from having any contact with her.  On July 22, 2002, Casey informed the Milford Police that Quint had violated the protective order by entering her home without permission and threatening her with bodily harm.  On August 20, 2002, Casey reported to the Milford Police that Quint violated the protective order by arriving at her residence to retrieve personal belongings without an escort, trespassing and vandalizing her vehicle.  Defendants Dunaj and Moore located

4

Quint at a local bar and arrested him for criminal trespass and violation of a protective order.

On October 25, 2004, the Connecticut Commission of Human Rights and Opportunities denied Quint's request for reconsideration of the dismissal of his CHRO complaint alleging gender discrimination.  The complaint was dismissed initially as untimely filed.

III. <u>Discussion</u>

There are seven claims remaining in this action:  (1) Quint was denied equal protection of the laws because defendants did not identify him in the July 9, 2002 police report as the complainant; (2) Quint's August 2002 arrest was improper because the arrest was effected without a warrant and without probable cause; (3) defendants Dunaj and Moore subjected Quint to unconstitutional conditions of confinement when they placed him in a cell without a mattress, blankets and sheets; (4) defendant Dunaj made false statements in an arrest warrant application that was not used to effect his arrest and caused him to be seized without probable cause; (5) Quint was denied equal protection of the law because defendants discriminated against him on the basis of gender; (6) defendants conspired to deny Quint his civil rights; and (7) defendants denied Quint his right to medical treatment.  Defendants move for summary judgment on four grounds:

(1) Quint's claims that he was arrested without a warrant and without probable cause and that his arrest violated his right to equal protection of the law are barred because judgment in his favor would undermine the validity of his conviction; (2) Quint's conspiracy claim is barred on the grounds that judgment in his favor would undermine the validity of his conviction and that Quint cannot establish a prima facie case of conspiracy by any of the defendants to violate his constitutionally protected rights; (3) Quint failed to exhaust his administrative remedies with regard to his claim of gender discrimination and cannot establish a prima facie case of gender discrimination; and (4) Quint's equal protection claim is barred because judgment in his favor would undermine the validity of his conviction and Quint cannot establish a prima facie case that he was not afforded equal protection of the law.

In his August 17, 2005 opposition, Quint stated that he could not properly set forth all material facts because he had not completed discovery. In response to this statement and other motions requesting an indefinite extension to the discovery period in this case, the court noted that the initial November 14, 2003 deadline for completion of discovery had been extended four times, until June 30, 2005. The court determined that Quint had not provided any reason for failing to complete discovery in

over two years and had not identified any relevant discovery
materials that he required.  The court declined to reopen
discovery and afforded Quint time to file a supplemental
opposition to the motion for summary judgment.  (See Doc. #156.)
Quint has not supplemented his opposition.

A.  Challenge to Validity of Conviction

Quint seeks declaratory relief and damages on his claims
that defendants arrested him in August 2002 without first
obtaining the required warrant and without probable cause, his
arrest deprived him of equal protection of the law and that
defendants conspired to deprive him of his civil rights with
regard to the arrest.  Defendants move for summary judgment on
these claims on the ground that a judgment in Quint's favor would
call into question the validity of his conviction.

The Supreme Court has long held that a state prisoner may
not use section 1983 to challenge "the fact or duration of his
confinement."  Preiser v. Rodriguez, 512 U.S. 475, 489 (1973).
Any challenge to the fact or duration of confinement must be
asserted in a petition for writ of habeas corpus.  See Wilkinson
v. Dotson, ___ U.S. ___, 125 S. Ct. 1242, 1245 (2005).  In
Wilkinson, the Supreme Court clarified its prior holdings[3] and

---

[3] The Court clarified the relationship among the holdings in
Preiser v. Rodriguez, 411 U.S. 475 (1973), Wolff v. McDonnell,
418 U.S. 539 (1974), Heck v. Humphrey, 512 U.S. 477 (1994) and

stated:  "[A] state prisoner's § 1983 action is barred (absent
prior invalidation)–no matter the relief sought (damages or
equitable relief), no matter the target of the prisoner's suit
(state conduct leading to conviction or internal prison
proceedings)–*if* success in that action would necessarily
demonstrate the invalidity of confinement or its duration."  125
S. Ct. at 1248.

If the court were to rule in Quint's favor on his claims
that his arrest was improper because defendants did not obtain
the required warrant, probable cause was lacking, defendants
denied him equal protection of the law or conspired to deprive
him of his protected constitutional rights, the validity of his
conviction necessarily would be called into question.  Thus,
these claims are not cognizable unless Quint provides evidence
that his conviction has been invalidated by reversal on direct
appeal or called into question by the issuance of a writ of
habeas corpus.  Quint has not provided this evidence in
opposition to the motion for summary judgment.  To the contrary,
he has provided a portion of the transcript of his sentencing.
Thus, defendants' motion for summary judgment is granted on
Quint's claims that he was arrested without a warrant and without
probable cause, that defendants denied him equal protection of

Edwards v. Balisok, 520 U.S. 641(1997).

8

the law with regard to this arrest and that defendants conspired
to deprive him of his constitutionally protected rights with
regard to this arrest.

    B.    <u>False Statement in Arrest Warrant Application</u>

Quint alleges that defendant Dunaj included false
information regarding Quint's actions on July 22, 2002, in an
arrest warrant affidavit.  The copy of the affidavit attached to
the third amended complaint indicates that the affidavit was
prepared on August 31, 2002, ten days after Quint was arrested.
He does not allege that he was arrested or prosecuted for the
charges listed in the affidavit.

To prevail on this claim, Quint

> must make the same showing that is required
> at a suppression hearing under <u>Franks v.
> Delaware</u>, 438 U.S. 154, 155-56, 98 S. Ct.
> 2674, 57 L. Ed. 2d 667 (1978):  the plaintiff
> must show that the affiant knowingly and
> deliberately, or with a reckless disregard of
> the truth, made false statements or material
> omissions in his application for a warrant,
> and that such statements or omissions were
> necessary to the finding of probable cause.
> <u>Golino [v. City of New Haven</u>] 950 F.2d [864,]
> 870-71 [(2d Cir. 1991), <u>cert. denied</u>, 505
> U.S. 1221 (1992)]; <u>Franks</u>, 438 U.S. at 171-
> 72, 98 S. Ct. 2674.  Unsupported or
> conclusory allegations of falsehood or
> material omission cannot support a <u>Franks</u>
> challenge; to mandate a hearing, the
> plaintiff must make specific allegations
> accompanied by an offer of proof.  <u>See</u>
> <u>Franks</u>, 438 U.S. at 171, 89 S. Ct. 2674.

<u>Velardi v. Walsh</u>, 40 F.3d 569, 573 (2d Cir. 1994).

9

Quint states that the arrest warrant affidavit falsely states that defendant Dunaj spoke to Quint at his mother's home. Quint states that defendant Dunaj called Quint on his cellular phone and not at his mother's house.  He does not include an offer of proof in opposition to the motion for summary judgment. However, even if Quint could demonstrate that the statement in the affidavit were incorrect, the court cannot discern how the misstatement was necessary to a finding of probable cause to arrest Quint.  Any arrest pursuant to this warrant, would have been on charges of violation of a protective order and criminal trespass.  Whether defendant Dunaj spoke to Quint at his mother's house or on his cellular phone does not alter the statements in the affidavit that Quint violated the protective order and committed trespass by going to his former girlfriend's residence on two occasions without a police escort.  The court concludes that Quint fails to state a cognizable claim for false statements in the arrest warrant affidavit and dismisses this claim.  See 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring the court to dismiss at any time allegations that fail to state a claim upon which relief may be granted).

C.   Equal Protection and Gender Discrimination

Quint's claims for violation of his right to equal protection of the law and gender discrimination are based on the

fact that he was not listed as the complainant on the police report of the July 9, 2002 police report. Quint alleges that defendants omitted this information because he is a man.

Defendants contend that Quint's argument is misplaced because the police were dispatched in response to the first anonymous call to the police department and not in response to his call. The transcript of the 911 calls supports defendants' position. (See Doc. #150-2, Ex. F.) The anonymous call was received at 2:13:30 a.m. and concluded at 2:14:52 a.m. The police were dispatched at 2:15:43 a.m. The responding officers reported arriving in the area at 2:20:21 a.m. and 2:21:29 a.m. Quint's call was not received until 2:20:40 a.m., after the first patrol car was in the area. Thus, the officers did not report to the scene in response to Quint's call and properly indicated in their report that the complainant was the anonymous caller.

Further, Quint has provided no evidence showing that he is a member of a protected class that has suffered disparate treatment by the Milford Police. To prevail on his claim for denial of equal protection, Quint must demonstrate that he was intentionally treated differently from other similarly situated persons and that there is no rational basis justifying the difference in treatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (setting forth "class of one" theory).

The Second Circuit has defined a party's burden in establishing a claim under <u>Olech</u>. <u>See</u> <u>Neilson v. D'Angelis</u>, ___ F.3d ___, 2005 WL 1244795, at *4 (2d Cir. May 26, 2005). The level of similarity between Quint and the persons with whom he compares himself must be extremely high; he must demonstrate that he was treated differently than someone who is "prima facie identical in all relevant respects." <u>Id.</u> at *4-*5.

In response to the motion for summary judgment, Quint has not provided any evidence of any other person who telephoned the police department to complain of being assaulted by a domestic partner, after police had been dispatched in response to another call, who was not listed on the police report as complainant. Because he has presented no evidence that he was treated differently, Quint's claim for violation of his right to equal protection necessarily fails. Defendants' motion for summary judgment is granted as to the equal protection claim.

Quint's gender discrimination claim is based on the same facts. He contends that if a woman had made the 911 call, she would have been identified as the complainant in the police report. Because Quint does not identify any statute or policy that defendants violated, the court assumes that Quint brings his gender discrimination claim under the Fourteenth Amendment's Equal Protection Clause.

As indicated above, Quint has presented no evidence in opposition to the motion for summary judgment to support a claim for violation of his rights under the Equal Protection Clause. Thus, defendants' motion for summary judgment is granted as to the gender discrimination claim as well.

D.    Conditions of Confinement

Quint contends that defendants Dunaj and Moore subjected him to unconstitutional conditions of confinement when they placed him in a cell for eight hours without a mattress, blanket or sheets.

Research has revealed no cases finding a constitutional violation where an arrestee was not provided a mattress and bedding for such a short period. See, e.g., Collins v. Ainsworth, 382 F.3d 529, 545-56 (5th Cir. 2004) (noting that denial of telephone access and mattresses to arrestees for less than twenty-four hours was de mininis inconvenience, not a constitutional violation); Proudfoot v. Chenger, Civ. A. No. 89-4290, 1990 WL 156605, at *4 (E.D. Pa. Oct. 3, 1990) (denial of a mattress, bedding and drinking water for twelve hours did not violate arrestee's constitutional rights).

Because Quint has presented no facts demonstrating that he was denied a constitutionally protected right, defendants' motion for summary judgment is granted as to the conditions of

13

confinement claim.

    E.   <u>Denial of Medical Treatment</u>

Quint claims that defendants denied him medical treatment on two occasions, on May 7, 2002 and July 9, 2002. Defendants contend that Quint did not suffer a serious medical need on either occasion.

Although the Second Circuit has determined that the Fourth Amendment governs claims for use of excessive force by police that arise prior to arraignment, <u>see</u> <u>Powell v. Gardner</u>, 891 F.2d 1039, 1044 (2d Cir. 1989), courts within the circuit are split regarding claims that police failed to provide proper medical care. <u>Compare</u> <u>Mowry v. Noone</u>, No. 02-CV-6357FE, 2004 WL 2202645, at *3-*4 (W.D.N.Y. Sept. 30, 2004) (considering claim of improper medical care for injuries caused by use of excessive force under the Due Process Clause of the Fourteenth Amendment) <u>and</u> <u>Nance v. New York City Police Dep't ex rel McKay</u>, No. 01CV424(JB)(JMA), 2003 WL 1955164 at *4 (E.D.N.Y. Apr. 24, 2003) (applying Fourteenth Amendment standard to claim of denial of proper medical care while in police custody) <u>with</u> <u>Arum v. Miller</u>, 331 F. Supp. 2d 99, 111 (E.D.N.Y. 2004) (applying Fourth Amendment to claim of denial of medical care at time of arrest) <u>and</u> <u>Freece v. Young</u>, 756 F. Supp. 699, 703 (W.D.N.Y. 1991) (applying Fourth Amendment to claim for denial of medical care).

In <u>Freece</u>, the court noted that the Second Circuit has taken a functional approach to determining when to apply the Fourth, Fourteenth and Eighth Amendments in the context of a claim for use of excessive force.  The continuum from arrest through incarceration is divided into three sections with different constitutional provisions governing claims arising in each section: the period of arrest and custody prior to arraignment is governed by the Fourth Amendment; the pretrial detention period between arraignment and conviction is governed by the Due Process Clause of the Fourteenth Amendment; and the time after conviction is governed by the Eighth Amendment.  The court held that, in light of the Second Circuit's functional approach to excessive force claims, there is no reason to consider plaintiff an arrestee when considering his excessive force claims but not an arrestee when considering his medical claims.  This court agrees with the reasoning of the Western District of New York in <u>Freece</u> that the holding in <u>Powell</u> seems to require that all claims arising prior to arraignment be considered under the Fourth Amendment.

Under the Fourth Amendment, denial of medical care is evaluated by reference to the totality of the circumstances surrounding the arrest and is considered one component of the objective reasonableness standard applied to any seizure.  <u>See</u>

Freece, 756 F. Supp. at 701.  The Fourth Amendment requires the
court to determine whether the alleged denial of medical care was
objectively unreasonable.  Motive or attitudes of the arresting
officers toward the arrestee are not considered.  See Arum, 331
F. Supp. 2d at 111.

On May 7, 2002, Quint was arrested by Milford Police on an
outstanding warrant from the Stratford Police.  Quint alleges
that he requested medical attention from the Milford Police when
he arrived at the Milford Police Department, but none was
provided until he was taken to the Stratford Police Department.
Defendants have provided a copy of the Stratford EMS report for
Quint's treatment on May 7, 2002.  The EMT noted that Quint only
wanted to have his injuries documented.  Quint refused all
treatment other than a bandage on his leg.  (See Doc. #150-2, Ex.
C at 2.)  During his deposition, Quint stated that his May 7,
2002 injuries were minor, just bruises and scratches.  (See Doc.
#150-2, Ex. A at 188, ll. 6-7.)

Quint also alleges that defendants did not provide him
medical attention for injuries received on July 9, 2002.  He
stated in his deposition, however, that he did not request
medical care for his injuries on July 9, 2002, because his
injuries consisted only of bite marks and a black eye and were
not life threatening.  He indicated that he only wanted the

injuries to be photographed so he could document his injuries for subsequent litigation. (<u>See</u> Doc. #150-2, Ex. A at 47, ll. 1-10, 16-21.)

Quint did not suffer serious injuries on either date. He conceded this fact at his deposition and indicated that his primary reason for requesting medical attention was to document the existence of the injuries for future litigation. The court concludes that the failure to provide medical care was not objectively unreasonable. Thus, defendants' motion for summary judgment is granted as to all claims for denial of medical care.

F.    <u>Conspiracy</u>

Finally, Quint alleges that defendants conspired to violate his constitutional rights because no defendant refuted the failure to identify him as the complainant in the police report.

To prevail of his claim for conspiracy, Quint must demonstrate (1) an agreement between at least two persons, one of whom must be a state actor, (2) to act in concert to inflict an unconstitutional injury and (3) an overt act done in furtherance of the conspiracy that causes damages. <u>See</u> <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 234-25 (2d Cir. 2002). The court has determined, however, that the failure to identify Quint as complainant did not violate his constitutionally protected rights. Thus, Quint has not presented any evidence supporting

17

the second element of his conspiracy claim.  Defendants' motion

for summary judgment is granted as to the conspiracy claim.

IV.  Conclusion

Defendants' motion for summary judgment [**doc. #150**] is

**GRANTED.**  The claim against defendant Dunaj for including false

statements in an arrest warrant affidavit is dismissed pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Clerk is directed to enter

judgment in favor of defendants and close this case.

**SO ORDERED** this 20th day of January, 2006, at Hartford,

Connecticut.

        /s/
        Alfred V. Covello
        United States District Judge